## CORTLAND COUNTY COURT.

PEOPLE *ex rel.* A. D. BROWN agt. VAN HOESEN, sheriff, &c.

*Excise law — Chapter 628, Laws of 1857 — Execution against the body valid without any teste — Residence — Person in jail for penalties for selling liquor not entitled to the liberties of the jail — Code of Civil Procedure, sections 23, 24, 149, 1366.*

An execution is valid without any teste.

A person in jail for penalties for selling liquors in violation of chapter 628 of the Laws of 1857, is not entitled to the liberties of the jail.

Section 32 of this act, which provides that "the person or persons against whom judgment shall be rendered, shall not be entitled, under any execution issued on such judgment, to the liberties of the jail," is not repealed by the Code of Civil Procedure.

*September,* 1881.

A. P. SMITH, *County Judge.* — On the first day of September, inst., upon the petition of A. D. Brown, the relator, I issued a writ of *habeas corpus* directing the sheriff of Cortland county to produce before me this day the body of the relator, with the cause of his imprisonment. In obedience to this writ he returns that he holds him by virtue of an execution against his body issued out of the Cortland county court, upon a judgment entered therein for a violation of the excise law of 1857. This return is traversed by the relator, who alleges that at the time when this execution was issued to the sheriff of Cortland county, the relator was not a resident of this county but resided in Tompkins county, and that no execution against his property was issued and returned prior to the issue of the execution on which he is imprisoned; that the execution on which he was arrested is void because not tested according to the Code of Civil Procedure, and that he is entitled at least to the liberties of the jail by reason of having tendered to the sheriff the bond required by law.

Most of the facts, except the residence, are conceded. The case is an important one and has béen ably presented by both sides, and from the vast number of authorities cited I conclude that all the law of this and other states bearing upon the questions involved have been presented. I shall therefore give to the three questions involved as much attention as my time will permit.

*First.* The relator insists that the execution is void because, not tested. Section 23 of the Code of Civil Procedure provides :

"A writ or other process issued out of a court of record must be tested except where it is otherwise specially prescribed by law, in the name of a judge of the court, on any day," &c.

Section 24 of the same Code provides :

"A writ or other process, issued out of a court of record must   *   *   *   be subscribed or indorsed with the name of the officer by whose direction it was granted, or the attorney for the party or the person at whose instance it was issued. *A writ or other process thus subscribed or indorsed is not void or voidable by reason of having no seal or a wrong seal thereon, or of any mistake or omission in the tests thereof*," &c.

While undoubtedly an execution is embraced in the terms "writ or other process," yet when we read the general requisites of an execution as contained in section 1366 of the new Code, which is substantially the same as section 289 of the old Code, and find no provision as to a test to an execution, and when we consider the fact, that for over thirty years the practice has prevailed under a similar provision, of issuing executions without a test, and no decision can be found holding it irregular, though the Revised Statutes all that time contained a similar provision as to tests of writs and processes (3 *R. S.* [5*th ed.*], 282, *sec.* 20). I am of the opinion that an execution is valid without any test. And were this not so it is a defect not affecting the rights of the parties and is amendable by the court at any time when the question is raised (*Herman on Executions, pp.* 54 *and* 55, *secs.* 67 *and* 68 ; *McIntyre*

agt. *Rowan*, 3 *Johns.*, 144). In the last case the court allowed
this very amendment after the defendant had been arrested
and while he was in prison on the process. No authority to
the contrary is produced and I can find none.

*Second.* The relator claims that he was a resident of Tomp-
kins county when this execution was issued, and that no exe-
cution was issued against his property to that county and
returned unsatisfied. Up to the 24th day of August, 1881,
the relator was and had been for years a resident of Homer.
He knew of this judgment. On that day under-sheriff
Borthwick called upon him with a property execution and
demanded pay thereon, and was told by the relator that he
had no property. This was in the forenoon. About three or
four o'clock in the afternoon of the same day he returned the
execution unsatisfied. That same afternoon the relator took
a few articles of personal property and went over the line of
the county to McLean and stopped at the hotel, and took con-
siderable pains to announce publicly that he had established
that as his permanent residence. Of course the plaintiffs
knew nothing of this declaration of intention to seek a new
home, and on the 27th day of August, 1881, they directed
their attorney to issue an execution against the person of the
relator, which he did, and on the twenty-ninth day of August
the relator having, for some purpose not disclosed, revisited
the scenes of his childhood, was taken at Homer on the exe-
cution. Without saying more than to state the facts I am
satisfied that there was no such change of residence as prevented
the issue of the execution to the sheriff of Cortland county,
and that this colorable change of residence, under the circum-
stances, should not be permitted to stand in the way of an
enforcement of the collection of this judgment. If such
changes of residence are to be recognized by courts, no lively
man with a single trunk can ever be captured on a body exe-
cution. The courts do not recognize technicalities to aid in
the defeat of justice. All rules are made with a view to pro-
moting justice, and where they are sought to be evaded, as is

apparent here, the courts must disregard the evasion, and determine the question as though no evasion had been attempted.

*Third.* The only remaining question is whether a person in jail for penalties for selling liquors in violation of chapter 628 of the Laws of 1857 is entitled to the liberties of the jail. By section 32 of that act it is provided :

" Sec. 32. In any judgment rendered or recovered on any bond to be given under this act, or for any penalty incurred under this act, the person or persons against whom such judgment shall be rendered shall not be entitled, under any execution issued on such judgment to the liberties of the jail."

The execution on which the relator is held was issued under this act for penalties incurred thereunder, and is therefore subject to the provisions thereof unless this action is repealed by subsequent legislation.

The relator contends that this section is repealed by the new Code which provides :

" Sec. 149. A person in the custody of a sheriff by virtue of an order of arrest ; or of an execution in a civil action ; or in consequence of a surrender in exoneration of his bail, is entitled to be admitted to the liberties of the jail upon executing a bond to the sheriff as prescribed in the next section.

It is admitted that the bond specified in the next section was tendered to the sheriff and he was requested to allow the relator the liberties of the jail, which he refused to do, and the question to be considered is whether in such refusal he was justified by the law. In other words, does section 149 of the new Code repeal section 32 of chapter 628 of the Laws of 1857. The last Code provides nothing new upon this subject. The Revised Statutes (3 *R. S.* [*5th ed.*]), 733, *sec.* 61, provided : " Every person who shall be in the custody of the sheriff of any county by virtue  *  *  *  and of any execution in a civil action  *  *  *  shall be entitled to be admitted to the liberties of the jail, &c., upon executing a bond," &c. This was the law when the act of 1857 was

passed and has been the general law in this state, at least since 1813, subject to the modification of statutes upon special subjects passed from time to time, like the act of 1857. The codifiers in charge of the new Code did not propose to frame new laws. They were appointed for the purpose of codifying and bringing into harmony the laws then existing. In doing so they have largely, as in this case, drawn upon the old and scattered statutes, employing the very language of those statutes and very clearly marking and specifying the statutes which should be repealed, and only changing those the interpretation placed upon which seemed to demand such change. And lest it might be held that certain statutes had been repealed by implication, the legislature, on the 10th day of May, 1880, passed an act specifying the acts and parts of acts repealed (*Laws of* 1880, *chap.* 245, *vol.* 1, *p.* 367, *&c.*). An examination of that act will show that while certain acts passed in 1857, and certain parts of the Revised Statutes are repealed, this provision, that violators of the excise law should not have the liberties of the jail, is not mentioned, and nowhere in the new Code or any enactment to which my attention has been directed has this provision been mentioned. While it was the law that all persons imprisoned in civil actions should be granted jail liberties on giving a bond to the sheriffs, the legislature in 1857 deemed it proper to say that an exception should be made against any who should be found guilty of a violation of the excise law, and the single question is whether the legislature that passed the new Code has shown any intention to repeal that wise exception. I say wise, because any act that takes out the element of close confinement from the penalty for violation of the excise law robs it of its most sacred and binding force. The legislature well understood that the great mass of those who would violate the excise law were pecuniarily irresponsible. If they could obtain the liberties of the jail, no matter how many judgments were piled up against them, they might continue to defy public sentiment and the law, and while the judgment was being

enforced by the nominal imprisonment of the law's violator, he might still be enjoying the profits of fresh violations. It was a wise provision of law which made this state of things impossible, and nothing but the clearest intent on the part of a subsequent legislature to repeal it should be recognized. We have seen that it has not been directly repealed. Has it been repealed, as claimed by the relator, by implication? The repeal of a statute when not done directly must be gathered from some indicated intention of the legislature. What is there in the acts passed subsequent to 1857, showing an intention to repeal the provisions of section 32 of chapter 628? It is not mentioned in any subsequent act as being repealed; it is not referred to in the repealing act of 1880; it is not referred to in the new Code; the provisions of section 149 above quoted are the same as those in existence when the act of 1857 was passed, they have only been rewritten and collated in the codification of the laws. Had a new law been passed creating the provisions of section 149, the question would have been more difficult, for we might have said that the passage of this new provision showed an intention on the part of the legislature to repeal the old. But this is not the case. The codifiers simply republish a law older than the codifiers themselves. But suppose it had been a new provision, how then would the matter stand? A repeal of statutes by implication is not favored by the courts. The cases upon that point are very numerous. I need but mention a few (*People* agt. *Smith*, 69 *N. Y.*, 175; *Matter of Comrs. of Central Park*, 50 *N. Y.*, 493; *Matter of the Evergreens*, 47 *N. Y.*, 216; *Pursell* agt. *N. Y. Life Ins. and Trust Co.*, 10 *Jones & S.*, 383; *People* agt. *Quigg*, 59 *N. Y.*, 83).

I have carefully examined the numerous authorities cited by the attorney for the relator and find no conflict in the law. Thus in *Dash* agt. *Van Kleeck* (7 *John.*, 477) the court held that the subsequent act introduced a new rule of law, and thus showed an intention in the legislature to repeal the former law. The same may be said of *Wood* agt. *Wellington* (30 *N.*

*Y.*, 218), and all the other cases cited by relator. In the case under consideration the law claimed to be repealed by the Code is one relating especially to one specific subject — the restriction of the sale of intoxicating liquors. It is in that sense a special statute. On a review of all the authorities I am satisfied that the true rule as laid down by the court of appeals in 50 New York, 497, is applicable to this case. " The law does not favor a repeal of statutes by implication. *    * A special and local statute *providing for a particular case or ·class of cases* is not partially repealed or amended as to some of its provisions by a statute general in its terms, provisions and application, unless the intention of the legislature to repeal or alter the particular law is manifest, although the terms of the general act would, taken strictly and but for the special law, include the case or cases provided for by it " (*Capeu* agt. *Glover*, 4 *Mass.*, 305). I find no evidence of any intent, express or implied, to repeal the provision of the act of 1857. It follows that any one imprisoned on a body execution issued on a judgment for penalties incurred for violations of the excise law, is not entitled to the liberties of the jail and the sheriff of Cortland county was right in refusing them to the relator.

The relator is " detained in custody by virtue of the final judgment of a competent court of civil jurisdiction and the execution issued upon such judgment," and in such case the statute requires all courts to forthwith remand such party (3 *R. S.* [6*th* ed.], 878, *sec.* 55). An order will be entered accordingly.