THE PEOPLE OF THE STATE OF NEW YORK ex rel. PERRIN A. STROUGH, Respondent, v. THE BOARD OF COUNTY CANVASSERS OF JEFFERSON COUNTY, Appellant.

*When a statute is repealed by implication — chapter 414 of the Laws of 1883 is a valid provision of law — when an act amending a statute repealed by implication is valid.*

Repeals by implication are not favored in the law, and the inconsistency or repugnancy of two statutes must be such as to be impossible of reconciliation or the former will not be held to be repealed by the later act. Yet, when such repugnancy exists, or the later statute, not purporting to amend a former one upon the same subject, covers the whole subject, and is plainly intended to furnish the whole law thereon, the former statute will be held to be repealed by implication, except that a general statute will not repeal a former one upon the same subject which is limited in its application to particular localities, unless the two statutes are so inconsistent that they cannot both stand, or unless the intent to repeal is clearly manifest in the general act.

Chapter 555 of the Laws of 1864 did not effect a repeal by implication of section 16 of chapter 179 of the Laws of 1856, and chapter 414 of the Laws of 1883 is a valid provision of law.

Where there is a positive re-enactment of a former statute, with such changes as the Legislature sees fit to make, and it is manifest from the act itself that it was

the intention of the Legislature that the act as thus passed should become the law of the State, such an act will be valid although the act which it purported to amend might otherwise have been regarded as repealed by implication.

Appeal by the defendant, The Board of County Canvassers of Jefferson County, from an order of the Supreme Court, made at the Jefferson Special Term and entered in the office of the clerk of the county of Jefferson on the 14th day of December, 1893, directing that a peremptory writ of mandamus issue, requiring the defendant to recanvass the votes cast at a certain election for school commissioner in the third school commissioner's district of the county of Jefferson.

*Watson M. Rogers* and *Charles W. Thompson,* for the appellant.

*John N. Carlisle, James A. Ward* and *Levi H. Brown,* for the respondent.

Martin, J.:

Prior to 1892 the third commissioner's district of Jefferson county comprised the towns of Alexandria, Cape Vincent, Clayton, Lyme, Orleans, Pamelia and Theresa. At its annual meeting in 1892 the board of supervisors of that county, in pursuance of the provisions of chapter 414 of the Laws of 1883, divided the county, exclusive of the city of Watertown, into three school commissioners' districts. By such division the third district was made to consist of the towns of Brownville, Cape Vincent, Clayton, Henderson, Houndsfield, Lyme and Orleans.

The only question involved in this case as to the rights of the relator to the office of school commissioner is whether the board of supervisors had power to make the division of 1892. This question is dependent for its solution upon the validity of the statute of 1883, as it is practically admitted by the respondent that if that statute is valid the order appealed from cannot be upheld.

Chapter 179 of the Laws of 1856, which was an act to provide for a more thorough supervision and inspection of common schools, and further to amend the statutes relating to public instruction in this State, by its first two sections provided that the boards of supervisors of the several counties in the State, composing each one Assembly district, the boards of supervisors of each of the counties

of Fulton and Hamilton, and the boards of supervisors of the several counties in the State having more than one Assembly district, except the counties of New York and Kings, should meet on the third day of June, and elect by ballot an officer to be called school commissioner for each county where there was but one Assembly district, and one for each of the counties of Fulton and Hamilton, and one for each Assembly district where there were more than one in a county, such commissioners to hold their office until the 1st day of January, 1858. It then provided for the election of a school commissioner in the several Assembly districts at the annual election in 1857 and every three years thereafter. It also contained the following section: " § 16. The several cities in this State which, under special acts, already elect superintendents of common schools, or whose boards of education choose clerks doing the duty of supervision under the direction of the board of education, shall not be included in any commissioner's district created by this act or authorized to be formed by the board of supervisors; and the several boards of supervisors in counties in which such cities are joined to towns in the formation of an Assembly district may divide the county, exclusive of such cities, into school commissioners' districts as they may deem advisable, but no town shall be divided in forming such districts."

In 1864 the Legislature passed an act entitled, " An act to revise and consolidate the general acts relating to Public Instruction." (Laws 1864, chap. 555.) Title 2 of that act is entitled: " Of the school commissioners, their election, powers and duties," and section 2 of that title is as follows: " The districts as organized under existing laws, and as recognized in the election of school commissioners at the annual election in eighteen hundred and sixty-three, shall continue to be held and regarded as the school commissioner districts in this State, except as the same shall be altered or modified by the Legislature."

Section 14 of title 13 of that act provides: " All provisions of law repugnant to or inconsistent with the provisions of this act are hereby repealed, saving always all rights of action vested under such prior provisions, and proceedings commenced for the assertion thereof; but nothing herein contained, unless it be so expressed, shall be construed, unless by inevitable implication, to revive any

act or portion of any act heretofore repealed; nor to impair or in any manner affect or change any special law touching the schools or school system of any city or incorporated village of the State."

Chapter 414, Laws of 1883, which was an act entitled: "An act to amend section sixteen of chapter one hundred and seventy-nine of the Laws of eighteen hundred and fifty-six, entitled 'An act to provide for a more thorough supervision and inspection of common schools, and further to amend the statutes relating to public instruction in the State,'" was as follows: "Section 1. Section sixteen of chapter one hundred and seventy-nine of the Laws of eighteen hundred and fifty-six is hereby amended so as to read as follows:

"§ 16. The several cities which already or which shall hereafter, under special acts, elect superintendents of common schools, or whose board of education choose clerks doing the duty of supervision under direction of the board of education, shall not be included in any commissioner's district created by this act or authorized to be formed by the board of supervisors; and the several boards of supervisors in counties in which such cities are joined to towns in the formation of an Assembly district may divide the county, exclusive of such cities, into school commissioners' districts as they may deem advisable, but no town shall be divided in forming such districts."

The theory upon which the respondent seeks to uphold the order appealed from is that section 16 of the Laws of 1856, providing for the division of counties into school commissioners' districts by the board of supervisors where cities therein are joined to towns in the formation of an Assembly district, was repealed by chapter 555 of the Laws of 1864 both by implication and by the provisions of section 14 of title 13 of that act, and that as section 16 was thus repealed, the statute of 1883 which purported to amend that section was a nullity.

Thus, at the outset, we are presented with the question whether section 16 was repealed by implication. Repeals by implication are not favored in the law, and the inconsistency or repugnancy of two statutes must be such as to be impossible of reconciliation, or the former will not be held to be thus repealed. (*People* v. *Smith*, 69 N. Y. 175; *Matter of Curser*, 89 id. 401; *People ex rel. Woods* v. *Crissey*, 91 id. 616; *Mark* v. *The State*, 97 id. 572.) Yet, when

such repugnancy exists, or the later statute, not purporting to amend a former one upon the same subject, covers the whole subject, and was plainly intended to furnish the whole law thereon, the former statute will be held to be repealed by necessary implication. (*The People* v. *The Gold & Stock Tel. Co.*, 98 N. Y. 67; *Heckmann* v. *Pinkney*, 81 id. 211.)

There is another rule, however, that modifies this, which is, that a general statute does not repeal a former one upon the same subject which is limited in its application to particular localities, unless the two statutes are so inconsistent that they cannot both stand, or unless the intent to repeal is clearly manifested in the general act. (*Matter of Commissioners of Central Park*, 50 N. Y. 493; *McKenna* v. *Edmundstone*, 91 id. 231; *People* v. *Quigg*, 59 id. 83, 88.)

By reference to the statute of 1856, it is seen that there were in that act two distinct and separate provisions in relation to school commissioners' districts; one, general, applying to all the State, except the counties of New York and Kings, making each Assembly district a school commissioner's district; the other, special, and applicable only to such Assembly districts as included a city, which had a superintendent of common schools or chose a clerk doing the duty of supervision under the direction of its board of education, which was joined to other towns. While the language of the statute of 1864 was, perhaps, sufficiently broad to include both, still, we are inclined to think that under the rule applicable to a general statute, where there is another upon the same subject which is limited in its application to particular localities, it did not effect a repeal by implication of section 16 of the Laws of 1856.

If that section was not repealed by implication, it is quite manifest, we think, that it was not repealed by section 14 of title 13, Laws of 1864, as it was only such provisions of law as were repugnant to, or inconsistent with, the provisions of that act that were repealed, and besides, that section expressly provided that nothing in that act contained should be construed to impair or change any special law touching the schools or school system of any city or incorporated village of the State.

Moreover, we think the fact that the Legislature in 1883 amended section 16 of the Laws of 1856 was a clear indication that it

regarded that section as still in force and applicable to the special cases mentioned therein. (*People ex rel. Stiner* v. *Morrison,* 78 N. Y. 84, 89 ; *Smith* v. *The People,* 47 id. 330, 339 ; *Whipple* v. *Christian,* 80 id. 523, 526 ; *Van Vranken* v. *City of Schenectady,* 31 Hun, 516, 518.) We are inclined to the opinion that section 16 was not repealed by the act of 1864.

If, however, this conclusion is incorrect, it does not follow that the statute of 1883 was invalid. It is claimed by the respondent, and the court at Special Term held, that as the statute of 1883 purported to amend section 16 of the act of 1856, which was repealed by implication, the act of 1883 was invalid, and the case of *The People* v. *Wilmerding* (136 N. Y. 363) was cited as sustaining that doctrine. We have carefully examined the *Wilmerding* case, but are unable to find anything in it which sustains that claim. We think that case is clearly distinguishable from the one before us, and that instead of being an authority to sustain the respondent's contention, it is to some extent an authority against it. That case merely decided what had been previously held (*People* v. *Supervisors,* 67 N. Y. 109), that where a statute was amended so as to read as prescribed in the amendatory act, it did not repeal the original statute, but that from the time of the passage of the amendatory act it was the only enactment on the subject as to future transactions; that as to them the former statute was wholly annulled, and lost all separate existence, and that a repeal of the amendatory act did not revive the original one. It was also held in that case that a legislative act upon a separate subject, based upon an assumed existence of an original act, would not revive it, in the absence of language equivalent to a re-enactment. In other words, it was held that mere legislative intent would not revive an act without something in the nature of an enactment to that effect; that intent, without action, was insufficient.

In *White* v. *The Inebriates' Home, etc.* (141 N. Y. 123, 127), the *Wilmerding* case was considered, and it was there said that all that was held in the *Wilmerding* case was that the repeal of a statute, which had incorporated by amendment an earlier enactment, did not operate to revive the earlier or original act, and the court adds : " There is good reason for holding, as we did in the *Wilmerding* case, against an indirect revival of a statute once repealed, by a

repeal of the repealing act; but none for holding that an enactment, however amended in its provisions, and however incorporated in the amendments, may not be further amended by reference to the statute in which it originally appeared." And in that case, where a statute passed in 1872 was amended and re-enacted in 1875, so as to read as prescribed in the latter statute, and the Legislature in 1877 amended the statute of 1872 without any reference whatever to the act of 1875, it was held that the statute of 1877 was valid and an amendment of the statute of 1872.

In *The Matter of Rochester Water Commissioners* (66 N. Y. 413, 421) it is said: "Ordinarily, and in the absence of any evidence of a legislative intent to the contrary, a substitution of one section for another by an amendment in the form in which this amendment was accomplished, would work a repeal of the original section from the time of the amendment, and as affecting all cases thereafter arising. But when, from the language of the statute and of the amendment, a different intent is apparent, such effect will not be given to it; and where other acts of the Legislature, passed at or about the same time, corroborate the evidence of intent, as gathered from the statutes under review, the duty of the courts is to give effect to the intent rather than to the literal terms of the act. The intent must not be conjectured, but must be apparent from all the statutes taken together, and consistent with the whole purpose and object as well of the original statute as of the amendment. This rule of interpretation is of frequent application, and is one of the most important and familiar canons of construction. It is not unfrequently necessary to resort to this rule of interpretation to prevent a miscarriage of the legislative intent and detriment to public interest. (*People* v. *Clute*, 50 N. Y. 451; *Smith* v. *The People*, 47 id. 330, and the authorities cited.)" (See, also, *Matter of Will of Kavanagh*, 125 N. Y. 418.) While, perhaps, there may be some difference between a statute which has been expressly repealed, and one that has been so amended as to read as prescribed in the amendatory act, yet, we are unaware of any principle of law which would prevent the Legislature from amending, by positive enactment, a statute repealed by implication, and still permit it to amend one that was annulled and had lost all separate existence by previous amendment.

We are of the opinion that where, as in this case, there is a positive re-enactment of a former statute, with such changes as the Legislature sees fit to make, and it is manifest from the act itself that it was the intent of the Legislature that the act as thus passed should become the law of the State, such an act would be valid, although the act which it purported to amend might otherwise have been regarded as repealed by implication. It seems to us quite clear that the intent of the Legislature to amend and re-enact as amended section 16 of Laws of 1856, is so apparent from the statute itself that the act of 1883 must be regarded as an enactment or re-enactment of a law containing the provisions included therein; and that, even if the statute which it purported to amend, would otherwise be regarded as repealed by implication, yet, the intent to re-enact such a law was manifest, and should be given effect. The statute of 1883, as it now stands, contains every provision which the Legislature sought to establish, and the only claimed defect is that it referred to a statute that may have been repealed by implication. Whether such statute was thus repealed, or whether it was not, in no way affects or changes the clear intent of the Legislature, as manifested by the act itself. In *Van Clief* v. *Van Vechten* (55 Hun, 467) it was held that the Legislature, by amendment, might revive a repealed statute. That case was subsequently taken to the Court of Appeals, but the question whether an act which purported to amend an act that had already been repealed, has the effect of an original enactment, was not decided. (130 N. Y. 571.)

These considerations have led us to the conclusion that the statute of 1883 was valid, and that, as the city of Watertown, whose board of education chooses clerks to perform the duty of supervision of the common schools of the city under its direction, was joined with other towns of the county in the Assembly district which is composed of the county of Jefferson, the board of supervisors of that county had power, by virtue of that statute, to divide the county, exclusive of the city of Watertown, into such school commissioners' districts as they deemed advisable, so long as they divided no town in forming such districts; and, hence, that the board of canvassers of the county was justified in canvassing the votes of the third school commissioner's district as it was established by the action of the board of supervisors in

1892, and the Special Term erred in granting the order appealed from.

This conclusion renders it unnecessary to examine the other questions presented by the appellant on the argument, as the order must be reversed on the ground already stated.

HARDIN, P. J., and MERWIN, J., concurred.

Order reversed, with costs, and motion for peremptory writ of mandamus denied, without costs.