(54 App. Div. 479.)

In re APPLICATION OF BOARD OF STREET OPENING AND IMPROVE-
MENT TO ACQUIRE TITLE TO FOX ST., OR
EAST 150th ST.

(Supreme Court, Appellate Division, First Department.    November 16, 1900.)

1. MUNICIPAL CORPORATIONS—STREETS—DAMAGES—ASSESSMENTS.
      The owner of certain land filed a map in 1851, designating a certain
   street thereon, which was never opened, worked, or used by the public,
   or accepted by the authorities.    In 1857, on petition of the then owner of
   part of the lands, the street was legally discontinued by the proper author-
   ities.    In 1871 the trustees of the town filed a map indicating the same
   street, but it was not opened and worked as a street for more than six
   years thereafter.    In 1873 the lands were conveyed by deed making no
   mention of or reference to such street.    *Held*, on an application by the
   city to acquire title to such street, that the owners were entitled to an
   award for the value of the land taken, free from any right of way or
   easement of the public in such street.

2. SAME.
      Where the owner of lands prepared a map in which land was laid out
   in small lots bordering on both sides of a street, which was shown as open,
   and the deeds for the lots sold at public auction described them as running
   along the sides of such street, the grantees acquired an easement or right
   of way over the whole street, though the fee in the street remained in
   the grantor; and the city could not obtain title thereto without awarding
   full compensation to the grantees therefor.

Appeal from special term, New York county.

Application of the board of street opening and improvement to
acquire title to Fox street, or East 150th street.    Appeal from an
order denying an application to confirm the report of commissioners
of estimate and assessment.    Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN,
O'BRIEN, and INGRAHAM, JJ.

John P. Dunn, for appellant city of New York.

Truman H. Baldwin, for appellant Mt. Morris Real-Estate Ass'n.

Barclay E. V. McCarty, for respondents executors, etc., of John
McConville.

Charles Gabriel, for respondent Yoran.

McLAUGHLIN, J.    This proceeding was instituted on behalf of
the city of New York to acquire title to land included within the
boundaries of a street theretofore known as "Fox Street," or "150th
Street," and to award damages to the respective owners for the land
taken.    Commissioners of estimate and assessment were appointed,
and in the preliminary report made by them they awarded to the
respondents the executors and trustees of John McConville, deceased,
the sum of $7,200, but in their final report the commissioners re-
duced this amount to $4,200; the reduction being made by reason
of the determination of the commissioners that the public had an
easement or right of way over that portion of the premises included
within the street claimed by the McConville estate, which reduced
the damages to which the respondents were entitled for the land
taken to the extent of the value of such right or easement.    A mo-
tion was subsequently made to confirm the final report of the com-

missioners, and after a hearing duly held the court, at special term, refused to confirm such report so far as the same related to the award to the McConville estate, upon the ground, as appears from the opinion of the learned justice sitting at special term, that "the commissioners adopted an erroneous basis in arriving at the assessment; that the owners are entitled to have the value of the real estate, free from the right of way of the public or of the private owners, awarded to them,"—and it directed that the report be returned to the commissioners for amendment and correction. From the order thus made the city of New York and the Mt. Morris Real-Estate Association have appealed.

In order to determine whether the commissioners did in fact "adopt an erroneous basis in arriving at the assessment," it is necessary to determine whether the city of New York had an easement or right of way over the land in question, or whether the entire title in and to such land was in the McConville estate. This determination can only be made by an examination of the conveyances by or through which the McConville estate claims title, as well as the acts of owners of this land, and proceedings by which an easement is alleged to have been acquired by the city. There is no substantial dispute as to the facts, the question presented being principally one of law.

In 1851 Gouverneur Morris owned a large tract of land, which included the land within the boundaries of the street, the title to which is involved in the subject-matter here under consideration. In that year Morris filed a map of his land in the town clerk's office, designating it, "A Map of East Morrisania." Upon this map different streets were indicated, and among others Uncas and Pontiac streets, which correspond respectively to streets designated in the record before us as Fox and Beck streets. Between 1853 and 1857 various parcels of this land were conveyed to one Benjamin Whitlock, and he in the latter part of the year 1857 had acquired title to all of the land now claimed by the McConville estate. During or prior to the year 1873 one John McConville acquired all of the land, and any and all interest therein previously held by Whitlock. All of the conveyances prior to the one under which McConville acquired his title contain a recital that the land was so conveyed "subject, nevertheless, to the use thereof by the public as heretofore granted and dedicated by said Morris." There was no such recital in the deed to McConville. In 1857 (the exact date is somewhat uncertain) Whitlock, then having the entire title, made an application to the commissioners of highways of the town of Morrisania to discontinue Uncas and Pontiac streets from the line of an old stone wall located upon the westerly boundary of his land, and what is now known as the "McConville Tract," upon the ground that said streets have become useless and unnecessary. In pursuance of this application the commissioners of highways of that town summoned certain freeholders, in the manner provided by statute, to determine and certify whether the portions of the streets mentioned in Whitlock's application had in fact become useless and unnecessary. After a hearing duly had for that purpose, such free-

holders certified that the portions of the streets mentioned in the application were useless and unnecessary, and the commissioners of highways thereupon, on the 26th of August, 1857, made and filed in the town clerk's office an order discontinuing Uncas and Pontiac streets in so far as they passed through the land of Whitlock. This order was regularly made in the manner pointed out by statute, and we think the legal effect of it was to devest the public of any and all right which it had theretofore acquired by the act of Morris in filing his map, or which it then had in or to the land included within the boundaries of the streets, so far as the same were designated and mentioned in Whitlock's application.

In this connection it is urged by the corporation counsel that the order of discontinuance was ineffectual, inasmuch as the portions of the streets sought to be discontinued had not then been opened and worked, and, inasmuch as they had not been opened and worked, they could not be discontinued. In other words, the contention is that under the statute then in force a street or highway could not be discontinued as an old one until it had been opened and worked; and to sustain this contention the case of People v. Griswold, 67 N. Y. 59, is cited. There is some force in the contention. It is difficult to see how a street or highway which has never been opened or worked can be discontinued, as an old one, unless the original occasion for it has ceased by reason of the opening of another highway or street, or unless there has been a material change as to its necessity. People v. Commissioner, 1 Thomp. & C. 193. We are, however, unable to see how this affects, or, indeed, has any bearing upon, the question here presented. If it be held that Uncas and Pontiac streets were not in fact discontinued by the order referred to, inasmuch as they had not been opened and worked, then it necessarily follows that the attempt made by Morris to dedicate the land covered by so much of these streets as were sought to be discontinued was ineffectual for that purpose. To constitute a valid dedication of land to the public, two things are required: The intent of the owner of the land to dedicate it, and an acceptance by the public of the land dedicated. And the act of the latter is just as necessary for the complete legal dedication as the intent of the former. Here it may be conceded that Morris intended in 1851 to dedicate the land covered by these streets to the public, but the record is absolutely barren of anything which shows or tends to show that the public did anything looking towards an acceptance of that dedication until 1857, when the proper authorities, by an order duly made as already indicated, discontinued the streets; and it matters not whether the order was sufficient to effect a legal discontinuance, because, whatever may be said as to that, it certainly must be held that it was sufficient, as indicating a refusal on the part of the public to accept from Morris the land which he intended to dedicate to it. It must, therefore, we think, be held that whatever rights the public had in and to the land included within the boundaries of these streets were, by the order made and filed by the commissioners of highways in 1857, either extinguished or relinquished.

But it is suggested by the corporation counsel that the act of the trustees of the town of Morrisania in filing the map which they did in 1871, including certain streets (among others, the ones indicated on the map filed by Morris in 1851), was an acceptance at that time of the dedication by Morris. It is unnecessary to consider what effect this act of the trustees had upon the streets indicated on the Morris map, and not included in the order of discontinuance made by the commissioners of highways in 1857. It certainly did not have the effect of restoring to the public that which it had lost either by the order of discontinuance, or by its own neglect or refusal to accept the land offered to it. Nor is there any force in the suggestion, for another reason: The filing of the map in 1871 could not constitute an acceptance of an offer made by Morris in 1851. The portion of the street in question had not prior to 1871 been opened and worked, nor was it opened and worked as a street for more than six years immediately subsequent to 1871. Chapter 311 of the Laws of 1861 provided that:

"Every public highway and public road already laid out and dedicated to the use of the public that shall not have been opened and worked within six years of the time of its being so laid out, and every such highway hereafter to be laid out and which shall not be opened and worked within a like period, shall cease to be a road for any purpose whatever, * * * and all highways that have ceased to be travelled or used for six years shall cease to be highways for any purpose. * * * The provisions of this act shall apply to every public highway and public road laid out and dedicated to the use of the public within the last six years, and to every such highway hereafter to be laid out."

At the time of the passage of this act, and for more than six years thereafter, the land, the title to which is now involved, was subject to the provisions of the statute just quoted, and, even though it be conceded that the dedication made by Morris was accepted by the public, it nevertheless lost whatever right it had in such land by its failure to open and work the street within the time specified in the statute; and it must therefore be held that it had ceased to be a highway for any purpose whatever, and that the public by reason thereof lost all right or interest therein. But, as already indicated, the dedication made by Morris never became effectual. It was not such a dedication as vested an easement in the public. A dedication, to be effectual, must within a reasonable time be followed by an acceptance; and the owner of the land, if the dedication be not accepted within a reasonable time, may recall it. Indeed, he may recall it at any time before the rights of the public have attached. What is a reasonable time must, of course, depend upon the particular facts and circumstances of each case. Lee v. Village of Sandy Hill, 40 N. Y. 442. The fact that Morris in 1851 filed a map upon which he showed the street in question did not bind him, or any one claiming under him, to an irrevocable dedication of that street to the public, unless the public availed itself of his act within a reasonable time, which, under the facts here presented, it did not do. The map filed by Morris in 1858, of course, has no effect upon the question presented, because at that time he

had parted with the title to, and had no interest in, the land which the city now seeks to take.

The foregoing consideration leads us to the conclusion that the learned justice at special term was correct in holding that the commissioners of estimate and assessment adopted an erroneous basis for the award made to the McConville estate. The owners of the land of that estate are entitled to have an award made to them for the value of the land taken, free from the right of way of the public in and to the street, and for that reason the report was properly returned by the special term to the commissioners for amendment and correction. Having reached this conclusion, it is unnecessary to consider whether title was acquired by the McConville estate by adverse possession.

This brings us to the consideration of the only remaining question, and that is the one presented by the appeal taken by the Mt. Morris Real-Estate Association. In the preliminary report the commissioners award to that association the sum of $8,100 for Fox street between Prospect and Union avenues. This award was made upon the assumption that this association owned the fee of Fox street, unincumbered by any easement or right of way of the owners of other lots bordering thereon. Objections were made to the report by the respondent Yoran, and, at a hearing before the commissioners, testimony was introduced on his behalf to the effect that there were easements or rights of way over the land of the association in his favor, as well as in favor of others who held land situate or bordering upon Fox street, the title to which had been acquired from the association. Upon this testimony the commissioners reduced the award to the association from $8,100 to $1,180, and in their final report awarded to the association the latter sum. The special term confirmed the report of the commissioners in this respect, and it is from this portion of the order that the association has appealed.

The facts involved in the appeal taken by the association are briefly as follows: On the 30th of April, 1891, the association became the owner of certain land bordering upon Fox street between Prospect and Union avenues, and, desiring to dispose of this land, the association in 1892 prepared a map, upon which the land was laid out into small lots bordering upon certain streets,—among others, Fox street. It advertised these lots for sale at public auction at a time and place specified, and, upon a map prepared for the information of bidders, Fox street was shown as an open street; and four lots—two on the northerly and two on the southerly side of it—were indicated as being bounded by or bordering upon that street. At the sale the two lots on the southerly side of the street and one on the northerly side of it were sold, and the conveyances given by the association described the land conveyed as running "along the northerly [or southerly] side of Fox street." The fourth lot was not sold, and it seems that the title to it is still owned by the association.

Giving to the conveyances made by the association to the purchasers of lots from it the most favorable construction possible, so far as the association is concerned, and assuming that by the terms

of these conveyances the association intended to reserve to itself the fee of Fox street in front of the premises conveyed, it must nevertheless be held that its grantees, inasmuch as the lands were described as bordering upon that street, which was shown as an open street, acquired an easement or right of way over the street between Prospect and Union avenues.

The cases of Lord v. Atkins, 138 N. Y. 184, 33 N. E. 1035, and In re Adams, 141 N. Y. 297, 36 N. E. 318, are in point. In the former case the court said:

"It is well settled that when the owner of land lays it out into distinct lots, with intersecting streets and avenues, and sells the lots with reference to such streets, his grantees or successors cannot afterwards be deprived of the benefit of having such streets kept open. When in such case a lot is sold, bounded by a street, the purchaser and his grantees have an easement in the street for the purpose of access, which is a property right."

In the latter case the court said:

"The rights which the several grantees of lots on both sides of this strip of land thus acquired impressed upon it all the characteristics of a public street, though it may not have been completely dedicated by the owner to that purpose, or accepted by the public authorities as a highway. This servitude thus impressed upon the land could not be extinguished, except with the concurrence and by the united act of every person who owned a lot bounded by the street. The commissioners, therefore, could only award the owner the value of the public easement proposed to be taken, deducting therefrom the value of the private easement which already incumbered the property; and we have held in such cases the owner's damages are nominal only, as the added burden is itself but technical and nominal. In re Village of Olean v. Steyner, 135 N. Y. 341, 32 N. E. 9, 17 L. R. A. 640."

See, also, Bank v. Nicholas, 64 N. Y. 65; Holloway v. Southmayd, 139 N. Y. 390, 34 N. E. 1047, 1052; Story v. Railroad Co., 90 N. Y. 144; Haight v. Littlefield, 147 N. Y. 338, 41 N. E. 696; Hennessy v. Murdock, 137 N. Y. 317, 33 N. E. 330.

The preliminary report awarded damages to the association upon the theory that it was the owner of the entire street, unincumbered by any easements or rights of way therein by the owners of other lands bordering thereon. This was clearly erroneous. The grantees of the association not only had a right of way over the street in front of the premises conveyed to them, respectively, but they also had a right of way over the entire street from Union to Prospect avenues, including that portion of it which passed in front of the lots still owned by the association, and the city could only deprive them of this right by awarding to them full compensation therefor. The association is, as already indicated, the owner of one lot bordering upon Fox street, and it is therefore entitled to be compensated for the injury which it sustains by the taking of Fox street. In re 173d St., 78 Hun, 487, 29 N. Y. Supp. 205. The award made is a substantial one, and, upon the record before us, we are unable to say that it is not a fair one.

It follows that the order of the special term is right, and must be affirmed, with $10 costs and disbursements to each respondent on the appeal. All concur.