(70 Misc. Rep. 82.)

In re TOWN OF RUTLAND.

(Supreme Court, Special Term, Jefferson County. December, 1910.)

1. HIGHWAYS (§ 75*)—DISCONTINUANCE—ORDER—PRESUMPTIONS.
      The making of an order discontinuing a highway presupposes the existence of a highway to be discontinued, since, unless there was a highway, the town authorities would have no jurisdiction to institute or entertain a proceeding for a discontinuance.
      [Ed. Note.—For other cases, see Highways, Dec. Dig. § 75.*]

2. HIGHWAYS (§ 44*)—ABANDONED TURNPIKE AND PLANK ROADS.
      The policy of the law has been to appropriate as highways abandoned turnpike and plank roads.
      [Ed. Note.—For other cases, see Highways, Dec. Dig. § 44.*]

3. HIGHWAYS (§ 77*)—DISCONTINUANCE—PROCEDURE.
      Laws 1873, c. 516, giving the commissioners of highways of two towns authority to discontinue any bridge or highway in the towns, at a certain place, attempted no express repeal of the general highway law (2 Rev. St. [5th Ed.] pt. 1, c. 16), and such officials in discontinuing a bridge or highway were obliged to proceed under the general highway law, and where it did not appear that the highway sought to be discontinued had become unnecessary, and there was no certificate of freeholders as to the uselessness of the road, as required by the general highway law, and no notice to those residing on the road was given, as

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

required by Laws 1873, c. 69, the highway and bridge were not discontinued by the procedure.

[Ed. Note.—For other cases, see Highways, Cent. Dig. §§ 263–268; Dec. Dig. § 77.*]

4. STATUTES (§ 225*)—CONSTRUCTION—STATUTES IN PARI MATERIA.

Statutes upon the same subject, being in pari materia, must be construed together and considered as one act.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 302,-303; Dec. Dig. § 225.*]

5. HIGHWAYS (§ 77*)—HIGHWAY COMMISSIONERS—POWERS.

The common-law rule is that authority vested in several must be executed by all, and inasmuch as Laws 1873, c. 516, gives to the commissioners of highways of two towns power to discontinue a bridge or highway, all the commissioners must sign the order of discontinuance or be notified to attend a meeting for deliberating upon such matter, and, where there has been notice to all which must appear in the order, the proceeding is not void if one omits to sign, as, under such circumstances, a majority may act.

[Ed. Note.—For other cases, see Highways, Dec. Dig. § 77.*]

6. HIGHWAYS (§ 79*)—ABANDONMENT—TEMPORARY INTERRUPTION.

Temporary interruption, because of the weakness or destruction of a bridge, though covering a considerable time, does not operate as an abandonment of the bridge as a public way; it being a highway until discontinued by proper authority.

[Ed. Note.—For other cases, see Highways, Cent. Dig. §§ 279–287; Dec. Dig. § 79.*]

7. DEDICATION (§ 20*)—HIGHWAYS—TIME.

A highway by dedication as against the owner of land over which it passes may be created by him within a less period than 20 years, but his act and intent so to do must appear by satisfactory evidence.

[Ed. Note.—For other cases, see Dedication, Cent. Dig. §§ 17–30; Dec. Dig. § 20.*]

8. DEDICATION (§ 35*)—ACCEPTANCE—HIGHWAYS.

Where a highway was used continuously from 1893, which use was facilitated by the labor of taxpayers of the town, under the implied, if not express, authority of the highway commissioners, it amounted to an acceptance.

[Ed.· Note.—For other cases, see Dedication, ·Cent. Dig. §§ 68–71; Dec. Dig. § 35.*]

9. BRIDGES (§ 22*)—JOINING OF TOWNS IN REBUILDING BRIDGES—DEMAND UPON TOWN TO JOIN—IRREGULARITIES—WAIVER.

Where a notice from one town to another demanding that it join in the rebuilding of a bridge over a river separating the towns was given by the supervisor instead of the town clerk, as expressly required by Highway Law (Consol. Laws, c. 25) §§ 252–255, and the town receiving the notice answered in writing refusing to join, without objecting to the sufficiency of the notice, and no objection was raised thereto upon a motion for an order requiring the town officials to direct the town superintendents to rebuild such bridge, as expressly permitted by Highway Law, § 256, irregularity in the notice will be deemed waived.

[Ed. Note.—For other cases, see Bridges, Dec. Dig. § 22.*]

Application of the Town of Rutland for an order requiring the Town Board of the Town of Le Ray to require the Town Superintendent to join the Town of Rutland in rebuilding the bridge across Black River known as the Power Plant Bridge. Judgment for applicant.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Fred H. Moore, for the motion.

Delos M. Cosgrove, opposed.

ROGERS, J.　This, as stated in the title, is an application to require the authorities of the town of Le Ray to join the authorities of Rutland to contribute to and with the town of Rutland one-half the expense of building a bridge across Black river at a point at and upon an alleged highway 3,440 feet down stream and southwesterly from the point where said highway crosses another highway leading to another bridge in the village of Black river.

The Black river is the boundary line between said towns. Laws 1801, c. 163; Laws 1802, c. 93; Laws 1806, c. 16; Rev. Laws 1813, c. 101.

This proceeding can be successfully maintained, if at all, only upon a finding that the locus in quo constitutes a highway; a part being in Le Ray and a part in Rutland, and the connection across the river being by virtue of a bridge. · Beckwith v. Whalen, 70 N. Y. 430.

On the 13th of August, 1873, the three highway commissioners of the town of Le Ray, and two of the highway commissioners of the town of Rutland made an order assuming to discontinue said highway including the said bridge. This order was made pursuant to the provisions of chapter 516 of the Laws of 1873, passed May 15th of that year.

Making the order presupposes the existence of a highway to be discontinued; because, unless there was a highway, the town authorities would have had no jurisdiction to institute or entertain a proceeding for discontinuance. Miller v. Garlock, 8 Barb. 153; Matter of Fox Street, 54 App. Div. 488, 67 N. Y. Supp. 57.

Whether the highway was created by deed, user, dedication, or proceedings under the general statutes does not appear; nor does it appear for what length of time it existed prior to 1873, except that it was beyond the memory of any witness produced upon the trial, and except, also, that it is designated in the said proceedings for discontinuance as the "Old Plank Road."

The policy of the law in this state has been to appropriate as highways abandoned turnpike and plank roads. People ex rel. Keene v. Supervisors, 151 N. Y. 190–194, 45 N. E. 453.

Neither does it appear to what extent the highway was traveled; but it must have been considerable, as it constituted the shortest and most direct route between the village (now city) of Watertown and the village of Black River and was a part of the principal thoroughfare easterly to the village of Carthage. It has recently been adopted by the proper authorities for the building of a state road extending from Watertown to the village last mentioned and is designated as route 27 in section 120, art. 6, c. 330, Laws 1908. The "good road" has now been completed with "macadam" pavement from Watertown to Carthage.

The statute of 1873, under which it was assumed to discontinue the highway, and which included the bridge and the approach for some distance on each side of the river, provides:

"The commissioners of highways of the towns of Rutland and Le Ray * * * are hereby authorized to discontinue any bridge or highway now existing or claimed to exist in said towns, below the village of Black River within one mile therefrom, and, in lieu thereof, to lay out, in the manner provided by law, a highway about one mile in length along or near the bank of Black river in the town of Le Ray, connecting the bridge at the village of Black river, to the line of the old plank road leading to the city of Watertown, and the expense of such new highway shall be borne equally by said towns of Rutland and Le Ray."

Besides discontinuing the road in question, a new highway was laid out in the town of Le Ray, as provided in the statute. For the land taken for the new highway, damages seem to have been assessed and paid to the owners.

While the new road remains open, it is practically unused—so little that grass is growing in the roadbed.

It does not appear from the evidence presented nor by recital in the order of discontinuance that any step in the proceedings was taken as prescribed by the general highway law as it then existed. There was no written application by a person liable to be assessed for highway labor (1 Rev. St. 513, § 54); no summoning of freeholders to certify in regard to the propriety of discontinuance (1 Rev. St. 502, § 2), nor evidence or finding that the old road had become unnecessary (Id. § 2); nor does notice appear to have been given to the persons living on said highway (Laws 1873, c. 69).

The portion of said road so attempted to be discontinued in the town of Le Ray was fenced on one side and bounded by a forest on the other. A temporary fence was built across it by Mr. Henry Huntington near to his house, and the portion so fenced in was used by him for pasturage.

The bridge that had crossed the river from time out of memory fell or was carried away by a flood in the spring of 1873. A new bridge was built on the same site by popular subscription in 1891 or 1892, but was carried away before completion. Soon thereafter (1893) the present bridge was built on the same site by "the town of Rutland and popular subscription," and was at once used by the public in connection with the abandoned road.

The last-mentioned bridge has now become weak and has been condemned. Nevertheless, since its erection it has been, and still is, much used by teams and vehicles, including automobiles.

In 1896 the town board of the town of Le Ray by resolution caused a post with a signboard thereon to be placed at the intersection of the road in question on the Le Ray side of the river and the new road previously laid out, with a hand pointing in the direction of the bridge, with the inscription, "This is not a highway."

From the time of said discontinuance order, road warrants for performance of highway labor were issued by the highway commissioners to the overseer of the road district which before had included such discontinued portion of the road in Le Ray, omitting any reference thereto; and the highway commissioners have assumed to ignore its existence as a part of the highway system of the town.

Nevertheless, in the year 1908, Frank Walts, who was then highway commissioner of Le Ray, caused a large boulder, that had rolled

down into and obstructed the road about 50 feet from the bridge, to be blasted in pieces and removed; and Perley Huntington, living on the farm adjoining said discontinued road for 19 years, has been employed by the commissioners of Le Ray to cut the brush alongside the road and to stone and repair the roadbed. He and others residing in the road district to which the discontinued part formerly belonged have been permitted to work out their highway taxes on such discontinued portion.

The first question then is: Did the proceedings mentioned work a discontinuance of the highway? The statute of 1873 attempted no express repeal of the general highway law (2 Rev. St. [5th Ed.] pt. 1, c. 16) as then existing. Its purpose apparently was to confer a power on the highway commissioners of the two towns in a proceeding not provided for by any statute; but, with respect to the general procedure, application by a person liable to be assessed for highway labor, the certificate of freeholders that the highway had become unnecessary, compensation to persons damaged by the discontinuance, and notice to such persons as live upon the highway, the law apparently remained as before, and for aught that I can see should have been observed.

While the Legislature had power to discontinue the highway and also to delegate the power to others (Egerer v. N. Y. C. & H. R. R. R. Co., 130 N. Y. 108, 29 N. E. 95, 14 L. R. A. 381), it did not by the act in question expressly or by implication provide that the commissioners should or might do it in any event, and whether it ought or ought not to be done; neither does it provide for those who might be inconvenienced or damaged by the change.

Statutes upon the same subject, being in pari materia, are to be construed together and considered in one act (1 Kent, Comm. 463; Perkins v. Perkins, 62 Barb. 631; People v. Smith, 69 N. Y. 175; People v. Commissioners, 77 Hun, 372, 28 N. Y. Supp. 871), and all ought to be complied with.

Under the general highway law, it must have appeared that the highway sought to be discontinued has become unnecessary. People v. Griswold, 67 N. Y. 59; Matter of Fox Street, 54 App. Div. 483, 67 N. Y. Supp. 57; People v. Pike, 18 How. Prac. 70.

The certificate of 12 freeholders as to the uselessness of the road was essential to give jurisdiction. People v. Hynds, 30 N. Y. 472; Town of Gallatin v. Loucks, 21 Barb. 578; Fitch v. Commissioners of Kirkland, 22 Wend. 132.

Who owned the land over which the road ran, who were the abutting owners, and who, if any, were damaged by the discontinuance of the road, are not shown. No notice to those residing on the road was given, as required by chapter 69, Laws 1873, yet those damaged, if there were such, could not be deprived of their interest in the highway except by due process of law. Const. N. Y. art. 1, § 6; Abendroth v. Manhattan R. Co., 122 N. Y. 1, 25 N. E. 496, 11 L. R. A. 634, 19 Am. St. Rep. 461; Egerer v. N. Y. C. & H. R. R. R. Co., 130 N. Y. 108, 29 N. E. 95, 14 L. R. A. 381; Matter of City of Rochester, 24 App. Div. 283–289, 48 N. Y. Supp. 764; Morgan v. King, 35 N. Y.

454, 91 Am. Dec. 58; Buckholz v. N. Y., L. E. & W. R. R. Co., 148 N. Y. 640, 43 N. E. 76.

Moreover, the power was to "the commissioners of highways of the towns of Rutland and Le Ray," not a part of them. The Le Ray commissioners all signed the order; only two of the Rutland commissioners participated, so far as the records show. I am informed there were in fact three commissioners in office at the time.

The common-law rule is that authority vested in several must be executed by all. Applying this doctrine to the highway statutes, it has been held that all the commissioners must sign, or be notified to attend for the purpose of deliberating upon and considering the matter in hand; and where there has been notice to all, which must appear in the order, the proceeding is not void if one omits to sign, as under such circumstances a majority may act. Babcock v. Lamb, 1 Cow. 238; Fitch v. Commissioners of Kirkland, 22 Wend. 132–135; People v. Hynds, 30 N. Y. 470; People v. Williams, 36 N. Y. 441; Matter of Baker, 173 N. Y. 249–254, 65 N. E. 1100.

Temporary interruptions by reason of the weakness or destruction of the bridge, though covering a considerable space of time, would not operate as an abandonment of it as a public way (Matter of Glenn & Florida, 50 Hun, 607, 3 N. Y. Supp. 461); the law being that once a highway it does not cease until discontinued by proper authority (Driggs v. Phillips, 103 N. Y. 77, 8 N. E. 514; Walker v Caywood, 31 N. Y. 51).

My opinion then is that the highway, including the bridge, was not discontinued by the proceeding attempted under the special act of 1873.

But, assuming this conclusion is not warranted and that there was a valid discontinuance in 1873, the second inquiry comes: Is it still a discontinued highway? Its use by the public has been continuous and without interruption since 1893.

A highway by dedication, as against the owner of land over which it passes, may be created by him within a less period than 20 years. His acts and intent so to do must appear by satisfactory evidence. 3 Kent, Comm. 457; Cohoes v. D. & H. C. Co., 134 N. Y. 402, 31 N. E. 887.

No owner has appeared to challenge the fact of dedication to the public use. The abutters have fenced and worked the road as a highway; it is in daily use by them.

In addition to the fact of dedication, there must be on the part of the town an acceptance. Here no town official has obstructed the road or otherwise interfered with it to the actual embarrassment of travel. There has been a public use for many years, facilitated by the labor of the taxpayers of the town by the implied, if not express, authority of the highway authorities; and it was to such an extent as in my judgment to amount to an acceptance, notwithstanding the officials, as such, by declarations and to a limited extent by acts, undertook to deny acceptance after August, 1873.

It must be remembered that the supervisor, commissioner of highways, and the overseers of road districts do not, as a whole or singly,

alone constitute the "town" or the "public." The users of the road, the inhabitants at large, must be considered in determining whether there has been an acceptance.

The town officers doubtless have sought to rid themselves of the cost of erecting the bridge; but the people of the town ought not to have the benefits of the way for a long period of time without bearing a share of the burdens.

It is not permissible to say one thing, and all the time, by implication, at least, do another. Nor should an important public improvement like the building of the state road be thwarted except for good cause. To do so would work serious injury to the inhabitants of the town of Le Ray as well as other persons whose business and convenience make the bridge almost a necessity. Palmer v. Palmer, 150 N. Y. 139–148, 44 N. E. 966, 55 Am. St. Rep. 653; McVee v. City of Watertown, 92 Hun, 306, 36 N. Y. Supp. 870; Thomp. Highways (3d Ed.) 65; Flack v. Village of Green Island, 122 N. Y. 107, 25 N. E. 267. The authorities cited bear on the question of dedication or acceptance.

This leads to the conclusion that, even if the original highway was discontinued, it has been recreated and is now one of the highways of the town.

As to the Rutland side, there seems to be no question. The proper town officers are prosecuting this proceeding without opposition, except as it comes from the Le Ray side of the river. Rutland asserts, and it must be so found, that there is a highway.

The bridge apparently comes within the provisions of the present highway law as to maintenance, repairs, and rebuilding (Laws 1909, c. 30; Consol. Laws, c. 25, § 250), requiring that the towns "shall be liable to pay * * * their just and equitable share of such expense when so constructed over streams or other waters upon their boundaries." This is to be at the equal expense of the two towns (Lapham v. Rice, 55 N. Y. 472; Day v. Day, 94 N. Y. 153–156; People v. Town Auditors, 136 App. Div. 166, 120 N. Y. Supp. 696), unless the board of supervisors of the county shall have otherwise apportioned it (Consol. Laws, c. 25, § 254), which does not appear to have been done.

The town of Le Ray has voted down a resolution to join the town of Rutland in rebuilding the bridge; and, after due notice in writing from the town board of the town of Rutland by Morris S. Gregg, supervisor, to the town board of the town of Le Ray to join in the rebuilding of said bridge, the town board of the town of Le Ray on April 29, 1910, gave notice in writing that it refused to join in such rebuilding. Id. § 255. This places the Rutland authorities in a position to move in the matter.

It will be noted, however, that the statute directs that the complaining notice be by the "town board" given by the "town clerk thereof." Mr. Gregg as supervisor is a member and the presiding officer of the town board (5 Consol. Laws, 4272, § 131), and he states in his affidavit "the deponent was directed by the town board of Rutland to institute and prosecute" the proceeding.

The answer by the Le Ray town board refusing to join probably amounts to a waiver of the informality, if any, of the Rutland demand. Crarey v. Smith, 2 N. Y. 60.

Moreover, the counsel for the town of Le Ray raises no objection to the form or manner of service of the notice. Schieck v. Donohue, 92 App. Div. 330, 87 N. Y. Supp. 206.

I conclude, therefore, that the town authorities of the towns of Le Ray and Rutland should direct their respective town superintendents to rebuild said bridge. Highway· Law, § 256. This should be done at an early day, as the present condition of the bridge is dangerous, and a serious accident is liable to occur at any time.

The statute directs that the court in granting the application should specify the amount to be expended in such rebuilding in the following language:

"If the motion be granted in whole or in part whereby funds shall be needed to carry the order into effect the court shall specify the amount of money required for that purpose." Highway Law, § 256; Matter of Mt. Morris, 41 Hun, 32.

The only information I have as to what' that sum shall be is contained in the affidavit and evidence of the county commissioner that the estimated cost is $10,000.

No costs are allowed to either party.

An order may be prepared corresponding with this memorandum; and, if not agreed upon by the parties, will be settled on one day's notice.

Ordered accordingly.