TOWN OF PELHAM, Plaintiff, *v.* CITY OF MOUNT VERNON, Defendant.

Second Department, March 26, 1951.

*Emanuel Schwartz* for plaintiff.

*Harold Borgwald, Corporation Counsel (Walter B. Solinger II,* of counsel), for defendant.

*Per Curiam.* This submitted controversy concerns the extent of the shares of the parties in the cost of maintenance and repair of a bridge across the Hutchinson River, a navigable

stream. The bridge connects the Town of Pelham with the City of Mount Vernon, and was built by the County of Westchester in 1916, on condition that the two municipalities agree to pay for its operation, maintenance and repair. Since that time the municipalities have, in fact, shared such expenses equally. The Town of Pelham now claims that its lawful share of the cost of maintenance, etc., is not one half but a portion of the total cost based on the assessed valuations of the real property in the two municipalities. It asks for a declaration and an accounting from the defendant city in respect of past overpayments by it. The defendant city claims that the expenses of operation, maintenance and repair should be borne equally by the parties. The agreed statement summarizes the controversy as follows:

" 28. The controversy hereby submitted for decision is whether or not plaintiff and defendant must share cost of operation, maintenance and repairs equally or in proportion to their assessed valuations, and in the event such costs are to be shared in proportion to assessed valuations, whether plaintiff is entitled to recover the sums it has heretofore expended in excess of its proper legal share and to have an accounting therefor."

The bridge in controversy, built in 1916 by the county, replaced a bridge which had been built in 1900. The 1900 bridge was built by the two municipalities under an enabling statute of 1897 as amended (L. 1897, ch. 269, L. 1898, ch. 591, L. 1899, ch. 232). The enabling statute provided that the cost should be borne by the two municipalities in proportion to the equalized assessed valuations of their taxable properties. That provision was as to the cost of construction. The statute and its amendments made no provision for maintenance. The fact is that thereafter the two municipalities shared such expenses equally.

In 1911, the War Department condemned the bridge. On December 9, 1912, the County of Westchester adopted a resolution authorizing the construction of a new bridge and directed its superintendent to prepare plans and specifications and submit them to the Board of Supervisors. On August 14, 1913, the Secretary of War authorized construction of the new bridge and amended the authorization on February 19, 1914. Thereafter the county requested the Legislature to amend section 61 of the County Law so as to provide that the cost of maintenance and operation of the bridge would fall on the municipalities.

The Legislature complied with the request and amended section 61 by chapter 233 of the Laws of 1914, effective April 8, 1914, to provide as follows:

"In case the bridge is constructed over a stream forming the boundary line between two towns or two cities or between a town and city, then they may agree with the county to operate and maintain such bridge jointly, in proportion to the assessed valuation of such town or city. The sum which the town or towns, city or cities are obliged to pay under such an agreement is a charge upon such towns or cities and shall be paid as other town or city charges are paid."

It is conceded that so far as anybody knows there never was any formal contract made with the county, as authorized by the amended statute, and that the only action taken by the respective communities in relation thereto appears in the following resolutions. By the defendant city on March 30, 1914:

"Resolved, by the common council of the City of Mount Vernon, that in the event of a bridge being constructed over the navigable inlet from Long Island Sound, separating the City of Mount Vernon from the Town of Pelham, in the County of Westchester, known as the Hutchinson River, at the expense of the County of Westchester, that the City of Mount Vernon will upon the construction and completion thereof assume the care and management of such bridge in conjunction with the Town of Pelham, and will pay its proportionate share of the expenses of the care and maintenance of said bridge thereafter."

By the plaintiff town on April 1, 1914:

"Whereas the Board of Supervisors of the County of Westchester at a meeting of said Board held December 9, 1912, passed a resolution authorizing the construction of a bridge at South Fulton Avenue, over the Hutchinson River between the City of Mount Vernon and the Town of Pelham, at County expense; and

"Whereas an amendment to Section 61 of the County Law has been enacted by the Legislature of this state, permitting municipalities to contract with counties for the maintenance and repair of bridges built at County expense; and

"Whereas the Board of Supervisors of Westchester County now propose to build said bridge between the City of Mount Vernon and the Town of Pelham at the expense of the County of Westchester upon the consideration and condition that said municipalities of Mount Vernon and Pelham enter into a contract with the County of Westchester for the maintaining and repairing of said bridge after completion;

" Now, Therefore, be it resolved: That the Supervisor and Town Clerk of Pelham be and hereby are authorized to execute such an agreement on behalf of the Town of Pelham."

Following the adoption of the foregoing resolutions by the municipalities the county, on April 13, 1914, adopted the following resolution:

" Whereas, the amendment submitted to the Legislature amending Section 61 of the County Law has become a law; and

" Whereas, the City of Mount Vernon and the Town of Pelham have expressed their willingness to enter into an agreement to maintain and operate a bridge over the Hutchinson River at Fulton Avenue, providing the County construct the same at County expense; and

" Whereas, the Town of Pelham and the City of Mount Vernon have passed resolutions authorizing the execution of an agreement to the effect that said town and city will operate and maintain said bridge when completed, now, therefore, be it

" Resolved, That the bid for the construction of said bridge of Lupfer & Remick for the sum of $47,000 be and the same hereby is accepted, and that the County Attorney is hereby authorized to draw a contract for the construction of the same, and the Chairman and Clerk of this Board are hereby authorized to execute said contract on behalf of the County."

The bridge was subsequently constructed, accepted by the county, and instructions given by the county to notify the municipalities.

Thereafter, and from 1916 to 1949, the two municipalities did in fact pay the cost of maintenance and repairs equally. Frequently the Town of Pelham made resolutions authorizing payment of half the costs of specific painting and repairs.

In June, 1949, the bridge was damaged and further and extensive repairs became necessary. The plaintiff then raised the question of the liabilities of the parties as to proportionate shares of the cost. The result was that the two municipalities entered into an agreement, dated October 10, 1949, under which it is recited that the city contends that the cost of repairs should be borne equally and the town contends that such cost should be apportioned according to assessed valuations; that the repairs are urgently needed; that to save delay the town will pay half the cost if the parties will submit their controversy to this court and the Court of Appeals; and that the agreement is without prejudice to the town's right to recover excessive payments at any time made. The submission is tendered for determination under this agreement.

The new bridge constructed by the county was completed in 1916, and, as has been stated hereinbefore, the parties hereto contributed equally to the cost of maintenance and repairs from that time until 1949, when the present controversy developed.

The plaintiff contends that the resolutions quoted above constitute the agreements provided for by section 61 of the County Law, and that they bind the two municipalities to the obligations in the proportions of their assessed valuations. Plaintiff further contends that the terms of the agreement having been fixed by section 61 of the County Law as amended, the municipalities could not enter into a contract upon any other terms, nor waive such terms; and that plaintiff is entitled to recover all excess payments made since 1916.

The defendant city contends that section 61 does not apply because the county was not authorized to construct a bridge over navigable waters; but that even if the section as amended could apply, it contends that it does not control here because the two municipalities never entered into the necessary agreements with the county, as provided for in the statute.

After the former bridge was condemned in 1911, the county resolved, in December, 1912, to construct a new bridge. By resolution of January 26, 1914, the county proposed to the Legislature an amendment to section 61 of the County Law so as to provide for payment of maintenance by the two municipalities in proportion to assessed property valuations. The amendment was adopted by the Legislature (L. 1914, ch. 233, now Highway Law, § 131-b). It is fair to assume, therefore, that the Legislature was aware of the intention of the county to build the bridge and of the parties hereto to pay for the maintenance thereof in accordance with the respective assessed property valuations.

Although no formal contract was entered into by and between the county and the two municipalities with respect to maintenance costs, the resolutions quoted above must be held to be the agreements contemplated by section 61. The fact that thereafter the municipalities divided such costs equally between them does not preclude the plaintiff from maintaining this action and recovering from the defendant the amount paid in excess of its ratable share by way of contribution, the excess representing part of the obligation of the defendant. (*New York City Employees' Retirement System* v. *Eliot*, 267 N. Y. 193; *New Paltz, H. & P. T. Co.* v. *County of Ulster*, 202 App. Div. 234, affd. 236 N. Y. 630; *T. J. W. Corp.* v. *Board of*

*Higher Education of City of N. Y.,* 251 App. Div. 405, affd. 276 N. Y. 644; *Aspinwall* v. *Sacchi,* 57 N. Y. 331; Civ. Prac. Act, § 112-f.)

The contention that the agreements are *ultra vires* the municipalities is not sustained; but even if it were, a defense based thereon would not be available insofar as the agreements have been executed and benefits received thereunder. (*Appleton* v. *Citizens' Central Nat. Bank,* 190 N. Y. 417; *Mutual Life Ins. Co.* v. *Stephens,* 214 N. Y. 488.)

There should be judgment for the plaintiff, but within the limits of the six-year Statute of Limitations. As this is a submission of controversy on an agreed statement, and the claims of the parties are properly set forth in the briefs with respect to the agreed facts, the Statute of Limitations may be invoked and a recovery should be had only for the period after October 16, 1944.

The decision in *Macrum* v. *Hawkins* (261 N. Y. 193) has not been overlooked. It is distinguishable in several respects, e.g., there the proposed bridge would have interfered with navigation, inasmuch as it did not include a lift or draw, as contemplated by section 62 of the County Law; and the county had not been authorized, by twenty-five resident taxpayers, to consider construction of the bridge, as required by section 61 of the County Law.

The plaintiff is entitled to judgment declaring that the parties must share the cost of operation, maintenance, and repair of the bridge in suit in proportion to their respective assessed property valuations; and that plaintiff is entitled to recover from the defendant the amounts it has heretofore expended in excess of the above-described share, and to have an accounting therefor, but such recovery and accounting should relate to a period commencing not earlier than October 16, 1944. In the event the parties are unable to state the account and agree upon the amount of the recovery, leave should be granted to apply to the court for further directions. The judgment should be entered, without costs to either party, as agreed in the stipulation.

NOLAN, P. J. (dissenting). The bridge which is the subject of this controversy was constructed by the County of Westchester at county expense, but upon condition that the cost of operation and maintenance should be borne by the city and the town. Plaintiff and defendant agreed to assume this liability by resolutions adopted in 1914. The resolution adopted by

plaintiff's town board authorized the supervisor and town clerk of the town to enter into a contract with the defendant and the county for maintaining and repairing the bridge after construction. That adopted by defendant provided that if the county should construct the bridge the defendant would, upon completion thereof, assume the care and management of the bridge in conjunction with plaintiff and pay its proportionate share of the expense involved. The parties could have contracted, pursuant to the provisions of section 61 of the County Law, as amended in 1914, to operate and maintain the bridge jointly, in proportion to their assessed valuations. The resolutions, however, did not provide that plaintiff's or defendant's share of the expense should be so determined and, in my opinion, do not constitute the contract contemplated by the County Law. Concededly, plaintiff did not so construe them, at least until 1949. If plaintiff was not authorized by law to contract for the maintenance of a bridge constructed by the county, except in accordance with the provisions of that statute, it should have judgment, since its town board or officers had no authority to enter into contracts on behalf of the town or to expend its funds, except as authorized by statute. (Town Law, § 64; *Holroyd* v. *Town of Indian Lake,* 180 N. Y. 318; *New Paltz, H. & P. T. Co.* v. *County of Ulster,* 202 App. Div. 234.) On the other hand, if plaintiff was authorized by law, independent of section 61 of the County Law, to contract to maintain the bridge and to expend its funds for that purpose, it should not be granted relief on a mere showing that it neglected to enter into a contract which it could have made for its own benefit, or on facts which indicate at most, if we assume that the resolutions adopted in 1914 constitute such a contract, that for some reason not stated it was promptly abandoned. Section 61, as amended in 1914, provided a means by which plaintiff and defendant could have apportioned the cost of maintaining the bridge. If they did not adopt the procedure thereby provided, however, they were nevertheless not only authorized, but were required to maintain it, pursuant to other statutory provisions.

The maintenance of a public bridge is a governmental duty resting on the State. The Legislature, in exercising its governmental functions, may charge the duty of maintaining highways and bridges upon a civil division in which they are located. In this State primary responsibility for such maintenance has always been upon the towns and their officers. This responsibility still remains upon the towns unless a statute has placed it elsewhere. (*Murphy* v. *Village of Fort Edward,* 79 Misc. 296;

*Markey* v. *County of Queens,* 154 N. Y. 675, 682; *Hill* v. *Board of Supervisors of Livingston Co.,* 12 N. Y. 52, 57.) At the time of the resolution by plaintiff's town board, in 1914, section 61 of the County Law (now Highway Law, § 131–b) provided that the entire expense of the construction of a county bridge, constructed by a county, should be a county charge, and that towns and cities might contract to maintain such a bridge after construction. There was nothing in that section, however, which required the counties of the State to maintain such bridges in the absence of such contracts, or which conflicted with the provisions of section 250 of the Highway Law (now § 232), which provided that a city of the third class and a town should be liable, each to pay its just and equitable share of the expenses for the maintenance and repair of public bridges constructed over streams or other waters forming the boundary line between the city and town. The same statute also provided that a town might borrow money, on its bonds, for the purpose of repairing any bridge within or upon its borders (Highway Law, § 97, now § 274). When plaintiff accepted responsibility for the maintenance and repair of the bridge, therefore, it assumed a liability which was not only authorized by law, entirely independent of section 61 of the County Law, but which it might have been required to assume, under the stated provisions of the Highway Law. Not having contracted under the County Law as to their respective liabilities, as they might have done, plaintiff and defendant were not only authorized, but were required to maintain the bridge at their joint and equal expense, unless the Board of Supervisors of the county should otherwise apportion their liability. (Highway Law, § 254; now § 235; *Matter of Town of Rutland,* 70 Misc. 82.)

The parties have agreed that plaintiff was advised by its attorney that it was required to defray one half of the cost of maintenance and repair of the bridge which formerly existed and which has been replaced by the present structure. They have not agreed, however, that in making payments for repairs to the present bridge plaintiff relied on this advice by its attorney or was not aware of the provisions of section 61 of the County Law, as amended in 1914, under which its proportionate share of such expense could have been reduced, or of the provisions of the resolutions adopted in 1914, which plaintiff now claims constitute a contract under that statute. Neither have they agreed that such payments were made under any other mistake of fact, or of law. We are called upon merely to define the effect of the agreed facts, and may not find any additional

fact, even though the submitted facts logically and reasonably admit of further inferences which a trier of the facts might well draw. (*Cohen* v. *Manufacturers Safe Deposit Co.*, 297 N. Y. 266; *Feist* v. *Fifth Avenue Bank*, 280 N. Y. 189.) This is not a case in which public funds have been paid out for an unlawful purpose or by a public officer acting without authority. (Cf. *New York City Employees' Retirement System* v. *Eliot*, 267 N. Y. 193 and *City of Biddeford* v. *Benoit*, 128 Me. 240.) The payments by plaintiff have been made voluntarily, for a lawful purpose, and by the duly constituted officers of the plaintiff, acting within their authority. Consequently, they may not be recovered in the absence of actionable mistake or fraud. (Cf. *Supervisors of Onondaga* v. *Briggs*, 2 Denio 26, and *Flynn* v. *Hurd*, 118 N. Y. 19.) On the facts submitted, there may be no present determination of the respective rights and liabilities of the parties with respect to the expense of present or future maintenance. The apportionment of such expense should be made by the Board of Supervisors (Highway Law, §§ 235, 274, 131-e), or provided by contract, pursuant to the provisions of section 131-b of the Highway Law.

CARSWELL, ADEL, WENZEL and MACCRATE, JJ., concur in *Per Curiam* opinion; NOLAN, P. J., dissents, with opinion.

Judgment directed for plaintiff, without costs, declaring that the parties must share the cost of operation, maintenance, and repair of the bridge in suit in proportion to their respective assessed property valuations; and that plaintiff is entitled to recover from defendant the amounts it has heretofore expended in excess of the above-described share, and to have an accounting therefor, such recovery and accounting, however, to relate to a period commencing not earlier than October 16, 1944.

In the event the parties are unable to state the account and agree upon the amount of recovery, leave is hereby granted to apply to the court for further directions.

Settle order on notice.