THE PEOPLE OF THE STATE OF NEW YORK, Plaintiffs in Error, *v.* EDWIN S. SMITH, Defendant in Error.

The provision of the Excise law of 1857 (§ 14, chap. 628, Laws of 1857), imposing a penalty for the sale by any person except an inn-keeper, who has obtained a license therefor, of "strong or spirituous liquors or wines," to be drank upon the premises, was not repealed by the act of 1870 (chap. 175, Laws of 1870) ; but by virtue of the provision of the latter act (§ 6) declaring that the provisions of the act of 1857, "except where the same are inconsistent," shall be taken as a part of the act of 1870, and shall "remain in full force and effect" the said provision of the act of 1870, remains in full force and is a part of the Excise law of the State.

The provision therefore of the act of 1870 (§ 4), authorizing the granting of licenses for the sale of intoxicating liquors in quantities less than five gallons, is to be construed in connection with the former provision, and a license granted under it gives no authority to one who is not an inn-keeper to sell liquors to be drank on the premises.

It seems that the provision of the act of 1857 (§ 6), requiring a petition of twenty freeholders as a condition precedent to the granting of an inn keeper's license is repealed by the act of 1870 ; *Per* FOLGER, J.

*Smith* v. *The People,* 9 Hun, 446, reversed.

(Argued March 20, 1877 ; decided March 27, 1877.)

ERROR to the General Term of the Supreme Court in the fourth judicial department, to review judgment, reversing a judgment of the Court of Sessions of Jefferson county, entered upon a verdict, convicting defendant in error of selling strong and spirituous liquors to be drank on the premises without having an inn-keeper's license, in violation of the excise law (§ 14, chap. 628, Laws of 1870.) (Reported below, 9 Hun, 446.)

It appeared that defendant in error had obtained a license in due form under section four of the act of 1870 (chap. 175), authorizing him to sell strong and spirituous liquors, wines, ale and beer in quantities less than five gallons, and it was claimed, upon his part, that that section repealed the provision of the act of 1857, upon which the indictment was founded, and that he was authorized by his license to sell liquors to be drank on the premises.

*Watson M. Rogers*, district attorney, for the plaintiffs in error. All the statutes of this State regulating the sale of spirituous liquors, being *in pari materia*, are to be construed together as one act. (1 Doug., 30; 1 Kent, 463; *Perkins* v. *Perkins*, 63 Barb., 531; *Com'rs of Excise* v. *Garlinghouse*, 45 N. Y., 249, 250.) Resort may be had to prior acts to ascertain the legislative intent. (*Behan* v. *People*, 17 N. Y., 518.) It is an offence for any one but a tavern-keeper to sell strong and spirituous liquors, to be drank upon his premises. (Laws 1801, chap. 165, §§ 6, 7; 1 R. S., 681, § 16.) There is no conflict between section 14 of the act of 1857 (chap. 628) and section 4 of the act of 1870 (chap. 175). (*Schwab's Case*, 4 Hun, 520; *Huffstater's Case*, 5 id., 23; *Com'rs of Excise* v. *Garlinghouse*, 45 N. Y., 249, 252; *O'Rourke's Case*, 3 Hun, 222; *People* v. *Smith*, Jeff. O. & T., April, 1876.)

*Thomas F. Kearns*, for the defendant in error.

FOLGER, J. The defendant was indicted and tried for selling strong and spirituous liquors and wines by retail, in quantities less than five gallons at a time, to be drank on his premises, without having a license therefor as an inn, tavern, or hotel-keeper. The jury found him guilty. There is not serious question but that he did sell intoxicating liquors in the quantities named to be drank upon his premises. There is no question but that he did so, without having a tavern license. His main defense was, that the board of excise of the city of his abode had given him a license to sell on his premises in the quantities named. The indictment was framed under the fourteenth section of the act of 1857, (chap. 628, pp. 404, 410.) The license relied upon by the defendant was granted under the fourth section of the act of 1870 (Laws of 1870, chap. 175, p. 456), and his farther reliance is that those two acts so conflict at this point as that the former is repealed as far as it relates thereto. And that is the real inquiry here; do the provisions of the fourteenth section of

the act of 1857, and other kindred sections of that act, so conflict with the fourth section of the act of 1870, and other kindred sections of it, as that the former must fall? We are not left simply to find an implied repeal of the act of 1857, by the repugnancy of its provisions, to those of the act of 1870. The legislature of 1870 plainly had in mind the act of 1857, and referred to it in their legislation in explicit and saving terms.

The phrase in statutes that "all acts or parts of acts inconsistent herewith are hereby repealed" is very common. It is used mostly, when the draftsman has quite covered the subject by his proposed enactment, and when there is no desire to save anything on the same subject in previous legislation. The phrase in the act of 1870 is materially different, and conveys no such notion. It is expressive not only of a desire to save provisions in the act of 1857 but of the consciousness of a necessity of doing so, to make of the act of 1870 a complete and operative enactment. Its language is: "The provisions of the act passed April 16, 1857, except where the same are inconsistent or in conflict with the provisions of this act, shall be taken and construed as a part of this act, and be and remain in full force and effect throughout the whole of this State." This is an uncommon and emphatic legislative expression. With how much greater force, in view of it, the rule of interpretation bears upon us: that a repeal of statutes by implication is not favored in the law, and, that when both the latter and the former statute can stand together, both will stand, unless the former is expressly repealed or the legislative intent to repeal is very manifest. The language of the books upon this subject uses all the forms of expression to show that it is the last thing to be done to declare that there is a repeal by implication; the inconsistency must be irresistible, and impossible of reconciliation; the difference must be a repugnancy (a strong word) not to be allayed. Here there is no express repeal. To determine what is repealed is left to the judicial inquiry of what conflicts, and from the force of the clause above quoted,

as well indeed as from the rules of interpretation, the conflict must be plain and unavoidable to make the prior statute fall. The legislative intent to repeal is never lightly to be inferred, and should be ascribed with great hesitation in this case, in view of the peculiar and striking phraseology of the reference to the former act. The act of 1857, when it became a law, was the sole Excise law of the State. It by express language repealed the provisions on that subject of the Revised Statutes, (1 R. S. pp. 677 *et seq.*) and the act of 1855, (chap. 231, p. 340,) and also repealed all other acts inconsistent with itself. It thus stood the law by which alone the privilege of selling liquor in small quantities could be reached. But it adhered to that which for many years had been the policy of the State, extending, indeed, back to colonial times, (see 1 Van Schaick's Laws, p, 741, 1773,) and adhered to ever since, save at few intervals of greater restriction. That policy was, that the privilege to sell strong liquor to be drank at the place and time of sale, would be given to him only who proposed to keep a tavern there ; while the privilege to sell in small quantities to be taken away from the place undrank might be given to others who did not propose to keep a tavern. It also adhered to another feature of former and long-continued legislation on this subject—that the same act which gave power to grant a license to sell liquors as a tavern-keeper, prescribed what must be had and kept to enter upon that calling, and enforced the prescription by a penalty. When the act of 1857 became a law, it was the sole law regulating the keeping of taverns. Mention is made of these two things, so as to add, that an intention to change this policy and usage, so long sanctioned, is not to be lightly imputed to the Legislature. If such purpose was formed by it, we should look for a quite plain expression thereof, and not feel forced to find it in slender implication or by labored interpretation. This law of 1857 stood as the Excise law of the State, unquestionably embodying this policy and usage so far as the State in general is affected, until the passage of the act of 1870. It is claimed that it had been infringed

upon in favor of localities. In 1866 an act was passed for the Metropolitan Police District (except Westchester county). That act, however, was a law complete in itself, and excluded from that district the operation of all other laws upon the subject. It may be conceded that, more by the absence of restrictive clauses than by affirmative provisions, it did permit the granting of licenses to sell liquors in small quantities, to be drank at the time and place of sale, without limiting the privilege to tavern-keepers; for there is no mention of tavern-keepers in it, nor any reference to any law as a part of it, which deals with that class of citizens. It was again infringed upon in 1867, when the same legislation was copied as to the Niagara police district. And it was also restricted in 1869, when power was given to license to sell ale or beer to be drank at the place without keeping a tavern there. This legislation, however, was plain enough, in showing a legislative intent to contravene the provisions of the act of 1857.

An argument is made that the act of 1870 conflicts with that of 1857, in the matter we are considering, from the fact that the act of 1870 adopts the very language of the acts as to the two police districts. As will be seen hereafter, that form of legislative expression is not so modern as the year 1866; and it is of counter significance, that the origin or forerunner of the act of 1870, was a bill simply to repeal the Metropolitan Police District Excise act, introduced into the senate of the State by a senator from that district, referred to a standing committee, and reported back with a recommendation for its passage. (Senate journal, 1870, pages 7, 40, 42). For that bill, at a later day, the act of 1870 was made a substitute, itself containing a repeal of that Metropolitan Excise act, and a prospective repeal of the Niagara police district excise law.

It is argued that the legislative intent was to extend the policy of the Metropolitan district excise law over the whole State. There is ground, quite as well, for the opposite inference, that seeing the ancient policy of the

State gradually eaten into by infringements for localities, the legislature meant to bring the whole State again under the former rule. And now we have as the excise law of the State, "in full force and effect throughout the whole of this State," the act of 1870, re-enacting and embodying with itself such parts of the act of 1857 as are not in conflict. It is plain at a reading, that the act of 1870 needs aid and supplement from the act of 1857 in many particulars, before it can be a complete and operative excise law. The act of 1870 was meant beyond doubt to aid in the restraint of the unlicensed and promiscuous sale of liquors in small quantities ; yet there is not in it, as originally passed, a penalty affixed to an offense, nor an offense declared by it. There is no provision in it for the bringing of suits for penalties, nor for the disposal of moneys collected thereby. Numerous are the provisions needed in a law dealing with the retail sale of intoxicating liquors, requisite to prevent an abuse of the privilege to sell, or to repress the sale without the privilege, for which the act of 1870 has to lean upon the act of 1857. So it has for all the provisions for the regulation of taverns. So it has for all the official, ministerial and judicial prescription, which such a law must have to be efficient.

It is quite obvious that, while meant as an excise law, not merely for revenue, but for restriction of sale, and in aid of order and good morals, it is but a skeleton enactment, and must be endued with active power, by putting upon it provisions from other statutes.

It is contended that the fourth section of the act of 1870 is a clear and explicit authority to the commissioners of excise to grant a license to any person of good moral character approved by them, to sell liquor at a place to be named, in quantities less than five gallons. This may be conceded when it is read alone. It is then said that in the absence of any restriction the licensee may sell to be drank upon his premises. This may be conceded if the absence is of a restriction upon the power to grant the license. It is then said

that the act of 1870 was obviously intended to change the law and to introduce a new system, and not amend an old law, and the inference made is, that it meant not to impose that restriction. This is the question at issue, depending for its solution upon what parts of the act of 1857 are taken into the act of 1870, not by an amendment of an old law, to be sure, but by re-enacting the old law and incorporating it with the new. The fourth section of the act of 1870 does, in general phrase, give power to the commissioners of excise to grant license to sell in small quantities. But is not a license to sell in small quantities not to be drank on the premises, a license to sell in small quantities? And is not a license to sell in small quantities to be drank upon the premises, a license to sell in small quantities? The first is the general power; the two others are the particulars of that generality. There is no inconsistency or conflict between either of the particulars and the general, no more than there is between the trunk and a branch of a tree. As has already been said in this court, " the principal purpose of the act of 1870 seems to have been to change the excise boards from county boards to city, town and village boards;" (*Board of Excise Ontario County* v. *Garlinghouse*, 45 N. Y., 249.) It was necessary, after creating the new boards, to clothe them with a general power to grant licenses, for they were not named in the act of 1857, and hence got no power from it to issue a license. Besides that, there is other difference in the enactment of considerable materiality. Thus, the requirement of the act of 1857 of a petition from twenty respectable freeholders, is done away with, and a larger discretion is given to the commissioners. So that this provision, without the large scope claimed for it, is not purposely meaningless, as is sometimes asserted. When they were given the power to issue licenses, it did not need also to particularize the licenses they were to issue, for they were specified in the act of 1857. The provisions of the act of 1857, as to the kinds of license, if standing in force, attached themselves at once to the general power granted by the fourth section of the act of 1870, and

governed the manner of its particular exercise. A law which in one section gave to a body of persons in a municipality the power to grant license to sell liquors in small quantities; and in another section prescribed that when it was intended that the licensee might so sell, to be drank upon his premises, it should be thus specified in his license ; and in another section, that when it was intended that he might not so sell, except to be taken away from his premises undrank, it should be thus specified in his license; would not properly be said to be inconsistent and in conflict in its provisions. It would be good legal composition thus systematically to begin with an expression of general power, and to go on to the ramification into particular modes of exercise of it. There is an instance of this in the text of the act of 1870, copied from the excise act of the Metropolitan district. Section four gives the general power to license any person of good moral character to sell in small quantity. Here is no expressed restriction as to time or occasion. But section five forbids a sale or giving away between the hours of one and five in the morning. There is no repugnancy in these two provisions, arousing a conflict between them so that one must entirely give way that the other may stand. It is so with all statutes which confer power and grant privileges, and then create safeguards upon the exercise of them. There are still more striking instances. One is in Van Schaick's laws, already referred to, §§ 2, 5, 13, 15. One other is in 2 Jones & Varick's laws (1788), p. 284, §§ 3, 9 and 10 ; and in 1 Greenleaf's laws (1788), p. 116, §§ 3, 6. The last two have so curiously a close resemblance to the fourth section of the act of 1870 that I forbear not to copy the third section which gives the general power to grant permits.

" III. It shall and may be lawful for the commissioners of excise, appointed or to be appointed by virtue of this act, annually, by writing under their respective hands and seals, to grant to *the several persons,* who shall reside in the respective cities, towns or places for which they shall be appointed as commissioner or commissioners as aforesaid, who shall apply

for the same, permits to retail strong or spirituous liquors
under five gallons, which said respective permits shall con-
tinue in force from the time of granting the same until the
first day of March next ensuing the date of such permit, and
no longer." I have italicised the words " the several per-
sons" in this section, for that an argument is founded by the
defendant upon the use of like words (" any person or per-
sons,") in the act of 1870, that the use of the " generic
term, instead of special terms," indicated the purpose of the
legislature to extend the privilege of license to all persons
instead of an enumerated few. Yet, after the use of like
phrase in section 3 of the act of 1788, we find a subsequent
section making the distinction between those proposing to
keep a tavern, who are to have a permit to sell to be drank
on the premises, and those who do not so propose, who are
not to have such permit, but only one to sell to be taken
away (section 9). And thus we have an example of a statute
harmonious and consistent in its several sections, starting
with the bestowal of general power to grant permits, and
after that declaring the particular modes in which that power
shall be exerted. And if harmonious and consistent when
found in one act, are not the same provisions harmonious and
consistent though found in two acts ? Who then may say
that these provisions in the act of 1857 are in conflict and
have been repealed ? It makes no different enactment than
that above suggested, to write in one act the 4th section of the
act of 1870, and the first clause of the second sentence in sec-
tion 2 of the act of 1857, and the first clause of section 6 of the
latter act, and section 11 of the same act, and section 14 of the
same act. The verbiage is more, but the essence of the
enactment is the same. Let any one take the two acts and
read these parts of them consecutively, and they will flow, with
some pruning of the verbiage, as one well constructed, consist-
ent enactment, harmonious in all its parts. This being so, is not
the irresistible effect of the clause of the sixth section of the act
of 1870, that " the provisions of the act of 16th April, 1857,
except where the same are inconsistent or in conflict with the

provisions" of the act of 1870, "shall be taken as a part of" it, "and be and remain in full force and effect throughout the whole of this State," is it not its irresistible effect, that those parts of the act of 1857 above cited do remain in full force and effect, and are a part of the excise law of the State?

Some other parts of the act of 1870, which have been copied from the act of 1866 (the Metropolitan District Act), have been relied upon to show that it was the purpose of the legislature to extend the policy of that act over the whole State. We do not think that such is a necessary conclusion. Thus, the provision that all licensed places shall be closed from one to five o'clock in the morning, is claimed as one peculiarly designed in its nature for places where sales are made of liquor to be drank on the premises. It would be more correct to say that it is more applicable to such places. It may not be denied that benefit will also come from the closing at that time, or at some hours of the night, of any place where sales are made in small quantities to be drank there or be taken away. The evils from the abuse of intoxicating drinks—and no observer of his kind can deny that there are evils therefrom—do not have their spring alone in the quaffing at the bar of a tavern. The purchase by the small measure and carrying away to be drank in seclusion is alike causative, and a wise lawgiver might well enact that the community should have some hours in the twenty-four of total cessation from each kind of traffic; and the same remark is applicable to the provision against sales on election days and on Sundays.

Much stress has been put upon the language, new, we believe, in the Metropolitan District Act, and copied into the act of 1870, that persons not licensed may keep, and, in quantities not less than five gallons at a time, may sell, strong and spirituous liquors, provided that no part thereof shall be drank on the premises. See how this provision enforces our argument. It cannot be supposed that it was not the intention of the legislature to prohibit the drinking in such case upon the premises, and to enforce the prohibition by punish-

ment; yet the act is silent upon that subject.  If it was meant to inflict a penalty, we have to look to the act of 1857 for the announcement of it.  But it cannot be found there, save in the fourteenth section, the very section under which this defendant is indicted.  So the dilemma is presented, that the legislature have made a provision prohibitory in its nature, with no penalty as a sanction, or that it has sent us back to a section of the act of 1857 to find the penalty, by which section it is declared that no one may sell to be drank on his premises without having a tavern license, under a penalty of $50 for each offence.  It is stated in the defendant's points that all persons had a right to sell in quantities of five gallons and over without any restriction as to where it could be drank, until the act of 1870, which prohibited it from being drank in the building.  This is a mistake.  The fourteenth section of the act of 1857 prohibits the sale of any quantity, large or small, to be drank upon the premises, without having a license as a tavern-keeper.

And this idea reaches further yet.  It will not be claimed that the act of 1870 was passed, providing for the granting of licenses on the payment by the applicant of a license fee and the showing of a good moral character, and meeting the approval of the Board of Excise Commissioners; and that the Legislature did not have a purpose that those who sold in small quantities without a license should be held as violators of the law, and should be punished therefor.  But there is no word in the statute of express prohibition of such sale; nor any word fixing punishment therefor, either by imprisonment, fine, or penalty.  What then ?  Is it so, that those who have no license to sell in small quantity have saved the license fee and the trouble of the application, and yet may sell by the small quantity, to be drank upon the premises without punishment or rebuke ?  No one so hardy as to claim this.  But where is the enactment fixing the punishment, or even declaring the prohibition ?  In the act of 1857, and there alone.  It is in the same fourteenth section.  We are not unmindful of the rule in Behans' case (17 N. Y., 516).

But here, in the act of 1870, there is neither declaration of punishment, nor express prohibition of the act. And resort must be had to the prior statute, or the startling alternative is presented that there is no law in this State, forbidding and punishing the sale of strong liquors in small quantities without having a license therefor. How significant in that view becomes the clause of the act of 1870, re-enacting the material parts of the law of 1857, to be and remain in full force and effect throughout the whole of this State.

There is another thing which materially sustains the position taken in the above discussion. It is a principle that the purpose and intention of the legislature, as to the repeal of an act, may be obtained from its dealing with that act, by legislation affecting it, had subsequent to the statute by which it is claimed to have been repealed; (*Smith* v. *The People*, 47 N. Y., 330, 340.)

Now since the passage of the act of 1870, the legislature has in repeated enactments recognized the existence, as an operative law, of the act of 1857, and in such manner as to repel the idea of a legislative purpose to obliterate its penal provisions. See chap. 332 of the laws of 1871, § 1, p. 643. By this act it is expressly recognized, which is tantamount to a legislative assertion, that some at least of the fines and penalties provided for by the act of 1857 are collectable, and to be sued for and recovered by the provisions of that act.

By the act chap. 549, of the Laws of 1873 (§ 5, p. 861), the 21st section of the act of 1857 is amended, which section, and as a consequence which amendment, recognizes the distinction between an inn, tavern or hotel-keeper, and other person. Chap. 820 of the same year (p. 1234), recognizes the existence of sections 22, 15, 19 and 30 of the act of 1857. This quite certainly. It would be capable of at least plausible reasoning, the proposition that "all the penalties imposed by" the act of 1857 were still in force and collectable in case of infringement; (see § 1 of chap. 820).

Chap. 642 of the laws of 1874 (p. 430), is a local act confined to the county of Westchester. It is very significant.

If the act of 1870 gave power to license any but an inn-keeper to sell by small quantities to be drank on his premises, then that power existed in Westchester county. But here we have a statute passed in 1874, which is minute and particular in giving power to grant such license to keepers of restaurants, saloons, etc., as well as to inn-keepers, etc. Thus it recognizes the policy of the act of 1857, and impliedly admits the existence and efficacy of the provisions of it, by the special legislation to provide a different rule for the county of Westchester.

These repeated expressions of the legislature are very significant that the act of 1857 was considered by it to be, in many of its provisions, still in force.

We have not taken into notice some enactments passed at different times upon the subject of the sale of liquors, because they do not affect the question in this case   A consideration of the acts of 1857 and 1870 is chiefly necessary here.

Our conclusion is that there is not that repugnancy between the material provisions of the two acts which brings them into conflict. It is too difficult, not to say impossible, to find any complete excise law in existence, which will regulate the sale of intoxicating liquors, prohibit and punish the unauthorized sale thereof, and regulate the keeping of taverns, without referring to the material parts of the act of 1857, for us to hold it in those parts inconsistent and in conflict with the act of 1870, unless we say that the Legislature that passed the act of 1870 did not intend that there should be such a law for the State. We hear no suggestion that such was the case, and do not for a moment entertain the idea ourselves. We think that the intent of the Legislature was to continue the policy and usage of the State in this important matter of the sale of intoxicating liquors, and that from the emphatic manner in which parts of the act of 1857 are kept in operation, and from the resemblance of this legislation to all that has gone before it, we are to be slow to imply a repeal of its material parts, or to so construe the act of 1870 as to work out a repugnancy.

Hence, we are of the opinion that the judgment of the General Term on this part of the case was erroneous, and that of the sessions was correct. The defendant at the trial in the sessions took other exceptions, and has also presented them on his points here. We have examined them. We do not find that the Court of Sessions made any error in its rulings in these respects.

In our opinion the judgment of the General Term should be reversed, and that of the sessions affirmed.

All concur.

Judgment accordingly.