MIRIAM ISAACS, Appellant, *v.* J. CARL SCHMUCK, Respondent.

Vendor and purchaser — real property — contract of sale — reformation — covenants — discovery by search of undisclosed restrictive covenants running with land — action to recover down payment — counterclaim for reformation of contract — insufficiency of allegations to sustain claim for reformation — covenant that no wine, malt or spirituous liquor shall be sold on premises an incumbrance affecting title — covenant not narrowed by adoption of Eighteenth Amendment and statutes thereunder — court may not require purchaser to accept less than complete dominion.

1. In an action to recover the down payment made by plaintiff on entering into a contract for the purchase of land from defendant, upon the ground that search had disclosed restrictive covenants running with the land not enumerated in the schedule of exceptions, no case for reformation of the contract can be found in the mere fact that the counsel for the buyer, who was to draw the contract, had received from the seller a deed from the latter's grantor containing a reference to the restriction, when the preliminary agreement to be reduced to written form was for a title free from all incumbrances except those specifically enumerated.

2. A covenant, which formed one branch of the restriction, that no " wine or malt or spirituous liquor " shall " be sold upon the premises," is an incumbrance sufficiently substantial to affect the quality of the title. The range of the covenant is broader than that of the Eighteenth Amendment of the Constitution, since the covenant includes sales by wholesalers and pharmacists permitted by the law. By the acceptance of this title, the buyer will be subject to a covenant whereby a business, otherwise lawful, is to be kept from off her land. She bargained for complete dominion and the court may not require her to be satisfied with less.

3. *Quære,* whether a covenant against noxious forms of business would constitute an incumbrance in view of provisions of the zoning law, and the remoteness of so great a change in the character of the neighborhood.

*Isaacs* v. *Schmuck,* 218 App. Div. 516, reversed.

(Argued March 28, 1927; decided May 3, 1927.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the second judicial department, entered December 3, 1926, which reversed an order of Special Term granting a motion for summary judgment, under Civil Practice rule 113 and denied said motion.

The following questions were certified:

"*1st.* Does paragraph 'Forty-first' of the amended answer state a defense to plaintiff's cause of action?

"*2nd.* Do paragraphs 'Forty-second' and 'Forty-third' of the amended answer state sufficient facts to constitute a cause of action?

"*3rd.* Does the restrictive covenant contained in the deed of Newbold Lawrence as executor to J. Carl Schmuck dated April 13th, 1895, render the title to the premises described in the complaint unmarketable under the terms of the contract between the parties, set up in the complaint?

"*4th.* On this record was the Special Term justified in granting plaintiff's motion for summary judgment? "

*Emanuel S. Cahn* for appellant. Paragraph forty-first of the amended answer does not state a defense to plaintiff's cause of action and paragraphs forty-second and forty-third do not state sufficient facts to constitute a cause of action. (*Metzger* v. *Ætna Life Ins. Co.*, 227 N. Y. 411; *Nevins* v. *Dunlap*, 33 N. Y. 676; *Curtis* v. *Albee*, 167 N. Y. 360; *Christopher & Tenth St. R. R. Co.* v. *Twenty-third St. Ry. Co.*, 149 N. Y. 51; *Allison Brothers' Co.* v. *Allison*, 144 N. Y. 21; *City of New York* v. *Matthews*, 156 App. Div. 490; *Moffet* v. *Jaffe*, 132 App. Div. 7; *Sweet* v. *Marsh*, 133 App. Div. 315; *Drachler* v. *Foote*, 88 App. Div. 270; *Stout* v. *Smith*, 98 N. Y. 25.) Defendant's title is unmarketable. Defendant contracted to convey the premises free of all incumbrances except zoning restrictions. This defendant could not do and plaintiff is entitled to the return of her deposit. (*Bull* v. *Burton*

227 N. Y. 101; *Dieterlen v. Miller*, 114 App. Div. 40; *Heim* v. *Schwoerer*, 115 App. Div. 295; 187 N. Y. 542; *Foster* v. *Scott*, 136 N. Y. 577; *Wetmore* v. *Bruce*, 118 N. Y. 319; *Warner* v. *Doscher*, 213 App. Div. 117; 241 N. Y. 605; *Yokshas* v. *Damcovich*, 214 App. Div. 640; *Groden* v. *Jacobson*, 129 App. Div. 508; *Oppenheimer* v. *Humphreys*, 9 N. Y. Supp. 840; 125 N. Y. 733.)

*Charles S. Noyes* for respondent. The respondent is entitled to a reformation of the contract by the insertion of a reference to the alleged restrictive covenant. (*Albany City Savings Inst.* v. *Burdick*, 87 N. Y. 40; *Frankenburg* v. *Perlman*, 180 App. Div. 174; 223 N. Y. 673; *International Ferry Co.* v. *American Fid. Co.*, 207 N. Y. 350; *Gotthelf* v. *Shapiro*, 136 App. Div. 1; *Kilmer* v. *Smith*, 77 N. Y. 226; *Friedman Marble & Slate Works* v. *Whitcomb*, 186 App. Div. 509; *Lenton* v. *Unexcelled Fire Works Co.*, 128 N. Y. 672; *Born* v. *Schrenkeisen*, 110 N. Y. 55; *Metzger* v. *Ætna Life Ins. Co.*, 227 N. Y. 411.) The covenant contained in the deed of Lawrence to Schmuck of April 13, 1895, does not render the title unmarketable, even if a reference to this is not inserted in the contract. (*Clement* v. *Burtis*, 121 N. Y. 708; *Lincoln Trust Co.* v. *Williams Building Corp.*, 229 N. Y. 313; *Postley* v. *Kafka*, 213 App. Div. 595; *Bull* v. *Burton*, 227 N. Y. 101; *McLean* v. *Woolworth Co.*, 204 App. Div. 118; *Schoonmaker* v. *Heckscher*, 171 App. Div. 148; 218 N. Y. 722; *Schurman* v. *Schechter*, 215 App. Div. 291; *Duryea* v. *Mayor, etc., of N. Y.*, 62 N. Y. 59 ; *Kitching* v. *Brown*, 180 N. Y. 414; *Munro* v. *Syracus , etc., R. Co.*, 200 N. Y. 224.)

CARDOZO, Ch. J. Plaintiff and defendant made a contract for the purchase and sale of real property located at Lawrence, Nassau county, New York. The sale was to be subject to the restrictions of a zoning ordinance, and to building encroachments, if any, upon street or highway. With those exceptions the title was to be free

of all incumbrances. The buyer, searching the title, found restrictive covenants, running with the land, and limiting its use. The seller had acquired title from one Lawrence in April, 1895, by a deed which provided in the *habendum* that the title of the grantee, his heirs and assigns should be forever subject to the same covenants and restrictions in respect of the use of the premises as were contained in a recorded deed, covering neighboring property, made by Lawrence to one Murray in June, 1891. The covenants thus incorporated by reference are the following:

"And the said party of the second part for herself, her heirs and assigns does hereby and by the acceptance of these presents covenant and agree to and with the said party of the first part his successors and assigns that neither the said party of the second part nor her heirs or assigns shall at any time hereafter permit or suffer any wine or malt or spirituous liquor to be sold upon the said premises or any part thereof or erect suffer or permit on the premises hereby granted or in any part thereof any building for the carrying on of any noxious trade or business or permit any noxious trade or business to be carried on upon said premises nor suffer any nuisances to be placed thereon. And it is understood and agreed between the parties hereto that this covenant is attached to and shall run with the land and it shall be lawful not only for the said party of the first part and his successors but also for the owner or owners of any lot or lots of land adjoining or in the neighborhoo( of the premises hereby conveyed deriving title through he said Newbold Lawrence, deceased or his devisees to institute and prosecute any proceedings at law or in equity against the person or persons violating or threatening to violate the same, it being understood however that this covenant shall not be enforced personally for damages against the said party of the second part her heirs or assigns unless she or they be the owners of that portion of the said premises upon

which the violation of this covenant is done at the time of such violation."

The plaintiff, having rejected title because of these restrictions, has sued to recover the down payment, $20,000, and $800 for services of counsel. The defendant has counterclaimed for the reformation of the contract so as to provide for the acceptance of title subject to restrictive covenants, and for specific performance of the contract as reformed. On plaintiff's motion for summary judgment under Civil Practice rule 113, the court severed the action (there being a contest as to the value of the services of counsel), and ordered judgment for the amount of the deposit, with interest and costs. The Appellate Division held by a divided court that the counterclaim though loosely pleaded, might be held, if liberally construed, to state a case for reformation. The reversal of the judgment was followed by the allowance of an appeal to this court with questions duly certified.

We find no case for reformation in the allegations of the answer and the supporting affidavits. In substance they amount to this: The seller was not represented by counsel at the making of the contract. The terms having been settled, the contract was drawn by counsel for the buyer. Before this was done, there was handed to counsel the deed from Lawrence to defendant which contained a description of the land to be conveyed. The fact that there was a restrictive covenant in this deed had gone out of defendant's mind. Defendant did remember that there was a like restriction in a deed of his own to one Holmes, and stated to the buyer that this restriction would be canceled. If he had remembered the earlier deed, he would have asked that the contract be made subject to its covenants. Counsel, having possession of the deed, had notice thereby that a restriction of some kind had been imposed. His failure to mention it is said to charge the buyer with a duty to accept the burden of the restriction whatever it may be.

6

We find nothing in this recital to sustain the claim for reformation. At · no time was there any agreement between buyer and seller that the land should be conveyed with the incumbrance of restrictive covenants. On the contrary, the understanding was that the only restriction then outstanding was the one in the later deed to Holmes, and that this would be extinguished. Even if the buyer's counsel, examining the defendant's deed, had observed a reference to some earlier restriction in the deed from Lawrence to Murray, he would have failed in his duty to his client if he had written into the contract a covenant to assume it. He did not know what it was, its extent, its duration, or anything else about it. The defendant is not asking for the cancellation of the contract on the basis of unilateral mistake. What he seeks is reformation. For this his own mistake will not avail unless shared in by the buyer or induced by the buyer's fraud. There is no charge of fraud. There is none of mutual mistake, or of discrepancy between the terms as settled by preliminary treaty and those embodied in the writing (*Born* v. *Schrenkeisen*, 110 N. Y. 55, 59; *Pitcher* v. *Hennessey*, 48 N. Y. 415, 423, 424). Neither in pleading nor in affidavit is there support for the conclusion that by the true agreement of the parties the land was to · be subject to an incumbrance not enumerated in the schedule of exceptions.

The question remains whether the restriction is of such a nature as to rank as an incumbrance, or one sufficiently substantial to affect the quality of the title. By one branch of the restriction the land is subjected to a covenant that no " wine or malt or spirituous liquor " shall " be sold upon the premises." The Eighteenth Amendment and the National Prohibition Act forbid the sale of intoxicating liquors for beverage purposes. If the covenant did no more, its existence would not serve to make the title to the land unmarketable (*Clement* v. *Burtis*, 121 N. Y. 708; *Bull* v. *Burton*, 227 N. Y. 101,

111). The difficulty is, however, that the covenant does more. Under the Constitution and the act of Congress, wine and liquor may still be sold when an appropriate license is obtained. There may be sales by pharmacists in limited quantities upon the prescription of physicians (41 Stat. 305, §§ 16, 17). There may be sales by wholesale dealers to buyers to whom permits have been issued (§§ 12, 16). Such sales, though lawful under the statute, would violate the restrictions to which the defendant's land has been subjected. We are not at liberty to construe the covenant as containing an implied exception of sales for sacramental uses or for medicine, in wholesale or in retail quantities. The meaning of the restriction is to be ascertained in the light of the conditions existing at the time of its creation (*Kitching* v. *Brown*, 180 N. Y. 414). At that time the sale of intoxicating liquors was regulated in the main by Laws of 1857, chapter 628, as amended by Laws of 1870, chapter 175 (see *People* v. *Smith*, 69 N. Y. 175). Licenses might be granted to the proprietors of inns, taverns and hotels for the sale of liquor to be drunk upon the premises. Licenses might be granted to other persons for the sale of liquor in quantities less than five gallons, but not to be drunk upon the premises (*People* v. *Smith, supra*). This was the form of license appropriate for pharmacists or grocers. There were other provisions for sales in excess of five gallons (L. 1870, ch. 175, as amended by L. 1887, ch. 679; *People* v. *Vosburgh*, 76 Hun, 562). The covenant in these deeds was not restricted to sales at inns, taverns or hotels. It covered sales for any purpose, in any amount, at any place (*Plumb* v. *Tubbs*, 41 N. Y. 442, 446, 447). Pharmacists were subject to its prohibition as much as innkeepers or grocers (cf. L. 1845, ch. 300, § 5). Of necessity this was so, or the restriction would have been reduced to mere futility. In the conditions then existing, there was no way of discriminating between sales for

beverage and for medicine. Prescriptions were unnecessary and, therefore, must have been rarely given. If given, they would have meant little, for they could have been issued without limit in amount or without check upon the good faith of the physician or the patient. The pharmacist was on the same plane as any other storekeeper when trafficking in liquor.

Later legislation, nearly, though not quite, contemporaneous with the covenant, preserves a like conception of the nature of the traffic. By the Liquor Tax Law of 1896 (L. 1896, ch. 112; Cons. Laws, ch. 34), excise taxes are divided into four grades. One tax is upon the business of trafficking in liquors to be drunk upon the premises where sold. A second is upon the business of trafficking in liquors in quantities less than five gallons, no part of which shall be drunk upon the premises where sold. Such a certificate may be issued to a duly licensed pharmacist as well as to other storekeepers (§ 11, subd. 3). A third is upon the business of trafficking in liquors by a duly licensed pharmacist, subject to the additional restriction that the liquor shall not be sold except upon the written prescription of a duly licensed physician, to be preserved by the vendor. The same statute makes provision for a system of local option, and prescribes the form of questions to be submitted to the electors (§ 16). One of the questions is this: Shall any corporation, association, copartnership or person be authorized to traffic in liquor under subdivision three of section eleven of the Liquor Tax Law, which provides for the sale of liquor as a pharmacist on a physician's prescription? Even a sale for medicine was thus recognized as a form of traffic to be excluded altogether at the will of the electors (cf. L. 1909, ch. 39). It was so recognized long before in the act of 1845 (L. 1845, ch. 300, § 5).

We think the conclusion is inevitable that the sale of liquor for any purpose was within the range of this cove-

nant at the time of its creation. There was no exception
in favor of wholesale dealers or of pharmacists or physi-
cians. If this is so, we may not say that the range of the
covenant has been narrowed by the adoption of the
Eighteenth Amendment and the statutes passed there-
under. No doubt the primary object of the covenant was
to prevent the unrestricted sale of liquor as a beverage.
Such a restriction might be useful in tending to reduce
intemperance and in improving the quality of the neigh-
borhood and hence the value of the property (cf. *Plumb* v.
*Tubbs, supra*). On the other hand, the opportunity for
evasion is at hand so long as sales are made at all, even by
wholesalers or pharmacists, a fact notorious to-day and
sufficiently attested by the exaction of a license. Judicial
notice of these conditions has been taken by our highest
court. " The opportunity to manufacture, sell and
prescribe intoxicating malt liquors for ' medicinal pur-
poses,' opens many doors to clandestine traffic in them
as beverages under the guise of medicines," and "facilitates
many frauds, subterfuges and artifices " (*Everard's
Breweries* v. *Day,* 265 U. S. 545, 561; *Lambert* v. *Yellowley,*
272 U. S. 581). The framers of the covenant were not
taking any chances. They knew that the prohibited
traffic was conducted by pharmacists and grocers as well
as at saloons and inns and restaurants. Very likely they
might wisely have excepted pharmacists just as they might
also have excepted grocers. They chose not to do so.
They prohibited the sale of wine and liquor absolutely
and always. Changes in the law, and in the business
now conducted by wholesalers and pharmacists, may
have made the enforcement of the covenant less important
than in the days when it was framed. They are not so
great that its object has been ended altogether (*Knight*
v. *Simmonds,* 1896, 2 Ch. 294, 298). It is still an addi-
tional safeguard, though a slight one, against intemper-
ance and disorder. " We cannot say that prohibiting

traffic in intoxicating malt liquors for medicinal purposes has no real or substantial relation to the enforcement of the Eighteenth Amendment, and is not adapted to accomplish that end and make the constitutional prohibition effective." These are the words of the Supreme Court in upholding the National Prohibition Act (*Everard's Breweries* v. *Day, supra*). For like reasons we cannot say that a kindred prohibition has no real or substantial relation to the enforcement of a servitude.

The plaintiff, if coerced into the acceptance of this title, will thus be subject to a covenant whereby a business otherwise lawful is to be kept from off her land. This is clearly an incumbrance (*Bull* v. *Burton*, 227 N. Y. 101, 111), and the contract is that the conveyance shall be subject to no incumbrance unless specifically excepted. The day may come when the plaintiff will find a purchaser who will wish to use the land for the prohibited purpose and no other. Should that day arrive, the covenant may defeat the sale. At best there will be exposure to the risk of litigation for an injunction, or, if an injunction be refused (*Forstmann* v. *Joray Holding Co., Inc.*, 244 N. Y. 22), for the recovery of damages (*Trustees* v. *Lynch*, 70 N. Y. 440, 453; *McClure* v. *Leaycraft*, 183 N. Y. 36). These are improbable contingencies. They are not so improbable that they may be disregarded altogether. We may suppose the case of a covenant stating in so many words that wine or liquor shall not be sold upon the premises even at times or for purposes permitted by an act of Congress. No one would say that the incumbrance would be a very serious one, yet no one would say that it would be anything less than an incumbrance. It would be the same in its effect as the prohibition of any other single business, *e. g.*, a restaurant or a bakery. The buyer bargained for complete dominion, and the court may not require her to be satisfied with less (*Bull* v. *Burton, supra; Cato* v. *Thompson*, 9 Q. B. D. 616, 618;

*Weinberg* v. *Sanders*, 204 App. Div. 409; *Peck* v. *Conway*, 119 Mass. 546, 550).

The conclusion thus reached makes it unnecessary to determine the effect of the restriction against noxious forms of business. Such a covenant approaches closely to a covenant against nuisances, even if somewhat broader (*McCarty* v. *Natural Carbonic Gas Co.*, 189 N. Y. 40; *Bull* v. *Burton, supra*). A covenant similar, but not identical, was held in *Bull* v. *Burton* (*supra*) to constitute an incumbrance, though the property affected was located on Fifth Avenue in the city of New York with the result that the use for any prohibited purpose was violently improbable. The decision in that case was reached by a closely divided court before the passage of the zoning laws. The effect of the covenant was to impose a present limitation upon the dominion of the owner, if moved by whim or fancy to dedicate his lots to a bizarre or freakish use. Here there are no present limitations beyond those imposed by law, and no prospect of any hereafter, unless prospect is extended to include a distant possibility. A possibility may be so distant that the clearness of a title will not be clouded by its presence. For this also *Bull* v. *Burton* may be cited as authority. One of the covenants in that case was against the erection of any building not made of brick or stone. A statute or ordinance contained a like restriction. The court dismissed as negligible the possibility of legislation whereby the provisions of the law would become less stringent than the provisions of the covenant (pp. 106, 107). By the zoning ordinance of the village of Lawrence the property in question, described in the answer as located in a high-class residential neighborhood, has been placed in a residence district. To make a noxious use permissible, the land would have to be taken out of a residence district, and even out of a business one, and put into a district wholly unrestricted. Some changes of the

ordinance, *e. g.*, from a residence to a business district, are within the bounds of reasonable probability (*Kimball Co.* v. *Fox,* 120 Misc. Rep. 701; 209 App. Div. 812; 239 N. Y. 554). We leave the question open whether changes wholly revolutionary, transformations so remote and speculative as to be little more than theoretical possibilities, may be disregarded as negligible in determining the quality of the title (*Bull* v. *Burton, supra,* 106, 107; *Cambrelleng* v. *Purton,* 125 N. Y. 610, 616).

The order of the Appellate Division should be reversed and the judgment of the Special Term affirmed, with costs in the Appellate Division and in this court. The first and second questions are answered in the negative and the third and fourth in the affirmative.

POUND, CRANE, ANDREWS, LEHMAN, KELLOGG and O'BRIEN, JJ., concur.

Ordered accordingly.