In the Matter of the Estate of EDWARD E. B. ADAMS, Deceased.

Surrogate's Court, New York County, December 16, 1943.

*Arthur M. Boal* and *Francis J. Fitzpatrick* for City Bank Farmers Trust Company and others, as executors, etc., petitioners.

*Howard E. Reinheimer* for Elizabeth C. Adams, respondent.

*Tompkins, Boal & Tompkins* for City Bank Farmers Trust Company, as trustee, and others, respondents.

FOLEY, S. This proceeding was initiated by the executors pursuant to section 145-a of the Surrogate's Court Act for the purpose of determining the validity of a notice of election filed by the respondent, Elizabeth Chalk Adams, who was the former wife of the testator, to take her intestate share against his will under the provisions of section 18 of the Decedent Estate Law.

The will contains no provision whatsoever for the respondent. The gross estate left by the testator was approximately $1,900,000.

Three general questions are presented for determination: (1) Whether a divorce procured by the former wife in Nevada bars her right of election; (2) Whether even after such divorce her right of election was preserved by the terms of a separation agreement; (3) Whether under the equitable powers of this court, a reformation of such agreement may be decreed so as to convert it into an agreement on the part of the testator to leave one half of his net estate to his former wife.

The testator and the respondent were married in New York in 1922. They lived together until about June 30, 1937. They separated and the wife went to live in California. No child was born of the marriage. In September, 1938, the husband began an action in New York against the wife for an absolute divorce. Personal service of the summons was made upon her in this State. Thereupon negotiations were entered into between the attorneys for the testator and the attorney for his wife which resulted in a separation agreement signed by her on October 28, 1938. Shortly thereafter Mrs. Adams established a residence in Nevada and sued her husband there for divorce on the ground of extreme cruelty. He voluntarily appeared in the action and interposed an answer. After a trial in which the plaintiff appeared by her attorney, independently chosen by her, and in which the defendant was represented by his own attorneys, a decree of absolute divorce was granted to the plaintiff. It was dated December 29, 1938.

The separation agreement had provided for the adjustment of certain property rights and for the payment of a lump sum of $275,000 in cash in discharge of the husband's liability for the support and maintenance of his wife. The full agreement was not carried into the decree, but a stipulation was filed in the action for the payment of the same amount as in the agreement which was embodied in the decree as a money judgment. The amount of the financial settlement was promptly paid and the judgment satisfied. Neither of the parties remarried and the husband died a resident of the State of New York on August 23, 1941.

Upon these facts, because the marriage had been dissolved and the respondent was not the wife of the testator at the time of his death, no right of election to take against the will existed under the provisions of subdivision 3 of section 18 of the Decedent Estate Law. It is therein provided: "The right of election shall not be available to a spouse * * * in whose favor a final decree or judgment of divorce recognized as valid by the law of the state has been rendered". Jurisdiction in the Nevada courts of the divorce action and of both parties to it has been conceded by the attorneys for the former wife. Independent of that concession, with the voluntary appearance of the husband in the action, the decree is recognized as valid under the law of our State. (*Tiedemann* v. *Tiedemann,* 225 N. Y. 709, affg. 172 App. Div. 819; *Glaser* v. *Glaser,* 276 N. Y. 296; *Hess* v. *Hess,* 276 N. Y. 486; *Guggenheim* v. *Wahl,* 203 N. Y. 390; *Hoyt* v. *Hoyt,* 265 App. Div. 223.)

For a period of almost three years during the lifetime of the testator, the former wife never challenged the validity of the divorce which she had obtained. Six months after his death she moved to set it aside in the court of original jurisdiction in Nevada. Because of the lapse of the statutory period for an application for the vacatur of a decree, the power of the court to vacate was attacked by the executors of the testator. They were successful. By final decision of the highest court of Nevada the attempt to reopen the decree was denied. (*Lauer* v. *Eighth Judicial District Court,* 140 P. 2d 953 [Nev.].) [Sept. 9, 1943.]

Subsequently the attorney for the former wife initiated a new attack by an action in equity to set the decree aside. That action is still pending. The general grounds of vacatur are stated to be extrinsic fraud practiced upon her by the husband and his attorneys in that she was forced to obtain the decree by threats, duress and coercion. It is also claimed that she obtained the divorce by reason of a mistake of law on the part

of herself and of her attorneys because of their ignorance of the provisions of section 18 of our Decedent Estate Law under which the divorce would bar her right of election.

With the confident assumption that the courts of Nevada under the tests of equity will scrutinize the laches of the former wife, her failure to attack the decree in the lifetime of her husband, the fact that property rights have vested in New York, the fact that she had the advice of her attorney in Nevada, the absence of any fraud or coercion, and most important of all, that the Nevada courts will apply the rule that an action for divorce abates on the death of either party, the probabilities are that the former wife will meet a deserved defeat.

The decision in *Foy* v. *Smith's Estate* (58 Nev. 371) appears to be directly in point under the rule of abatement of an action by the death of either party. There the highest court of Nevada said: " As to the question of the right of the plaintiff to have set aside the decree of divorce, it is clearly not debatable. Death terminates all such questions [citing 1 C. J., Abatement and Revival, 208; 1 R. C. L., Abatement and Revival, § 35; note, 104 A. L. R. 654; *Grotsch* v. *Hassey*, 133 Misc. 373]."

But with these attempts in Nevada to nullify the divorce we are not at all concerned in this proceeding. The testator was a resident of the State of New York. The law of our State exclusively applies to the right of election of a widow and to the right of inheritance by any person in his estate. Even if the decree should be vacated by the Nevada courts, the former wife is estopped and barred from any right of election under subdivision 3 of section 18 of our Decedent Estate Law by her overt act in procuring her divorce.

The observation of Mr. Justice JACKSON in *Irving Trust Co.* v. *Day* (314 U. S. 556, 562, affg. *Matter of McGlone*, 284 N. Y. 527), which involved the constitutionality of a situation arising out of section 18 of the Decedent Estate Law, is pertinent: " Rights of succession to the property of a deceased, whether by will or by intestacy, are of statutory creation, and the dead hand rules succession only by sufferance. Nothing in the Federal Constitution forbids the legislature of a state to limit, condition, or even abolish the power of testatmentary disposition over property within its jurisdiction. (*Mager* v. *Grima*, 8 How. 490; *United States* v. *Fox*, 94 U. S. 315; *United States* v. *Perkins*, 163 U. S. 625; cf. *Randall* v. *Kreiger*, 23 Wall. 137, 148.) Expectations or hopes of succession, whether testate or intestate, to the property of a living person, do not vest until the death of that person. Appellants cannot successfully attack

the constitutionality of the new legislation which went into effect before McGlone's death, and became operative only as the result of his own voluntary act."

The concluding provisions of subdivision 3 of section 18 of the Decedent Estate Law expressly apply to the facts here. They declare that a right of election shall not " be available to a spouse who has procured without the state of New York a final decree or judgment dissolving the marriage with the testator where such a decree or judgment is not recognized as valid by the law of this state."

This legislation was recommended to the Legislature by the Decedent Estate Commission of which the author of this decision was chairman. Subdivision 3 was deliberately drawn to close the door against a spouse who procures a divorce, even though such a divorce was not recognized as valid by our State. The spouse who thus obtains a divorce was to be estopped from claiming any right to participate in the estate of the other spouse. The entire section was intended to protect only the faithful spouse and one who had not " obtained release from her marital status ". (Combined Reports of the Decedent Estate Commission [Reprint], pp. 20, 31, 188.) In the explanatory note which was printed in the legislative bill which enacted this legislation in 1929 and is therefore indicative of the legislative intent, it was stated: " The provisions of the section deny a right of election to either a widow or surviving husband in the following cases: * * * (b) Where either husband or wife as plaintiff has procured a judgment or decree dissolving the marriage, in another state or in a foreign country, which is not recognized as valid by the laws of this state. Such a judgment or decree should act as an estoppel against the one procuring it (notwithstanding it is not accorded recognition by the courts of this state) as held in Starbuck v. Starbuck, 173 N. Y. 503, and Monroe County Savings Bank v. Yeoman, 119 Misc. 226 ".

In *Starbuck* v. *Starbuck* (173 N. Y. 503), cited in this note, it was held that a wife who procured a divorce in another State could not thereafter be heard to question the jurisdiction of the court which rendered the decree. The decree constituted an estoppel and operated to defeat her claim that she was the widow of her former husband, the decedent, and entitled to dower in the real estate acquired by him after the decree. The Court of Appeals in that case referred to a similar conclusion reached in *Matter of Swales* (172 N. Y. 651, affg., on opinion below, 60 App. Div. 599). There the former wife of the decedent, a resident of New York, had obtained a decree of divorce

in Illinois which purported to dissolve the marriage between the parties in a form not recognized by the laws of our State. By that conduct it was held that the former wife had lost her status as widow and was not entitled to letters of administration.

The intention of the Legislature in the enactment of section 18 of the Decedent Estate Law and in conferring a right of election or providing for its denial as to certain spouses, plainly contemplated that the factual situation at the death of the testator or testatrix was to be the test. Where a decree of divorce had been obtained by the surviving former spouse, which stood unaffected at such death, the right to elect had been destroyed. Any subsequent action to vacate it was worthless. It was and is common knowledge that in certain countries and States divorces are easily procurable. It may be fairly assumed that they were just as easily capable of being set aside after the death of one of the parties. The disturbance of the inheritance of property under the will of the former spouse first dying was intended to be guarded against by our statute, otherwise, a fertile source of litigation and uncertainty and delay in the distribution of an estate would be created. The Legislature, therefore, provided against these unjust contingenies by making the mere affirmative act of the procurement of the divorce a disqualification of the spouse who obtained it from any privilege to attack the will.

The Surrogate holds, therefore, that the respondent, the former wife here, is barred as a matter of law under subdivision 3 of section 18 of the Decedent Estate Law, by her overt act in procuring the decree of divorce which she voluntarily sought in Nevada, whether it is vacated or not.

The respondent attempts, however, to overcome the bar of the statute by a contention that the separation agreement preserved the right of election to her even after the making of the decree which dissolved the marriage. That agreement provided that the wife expressly " abandons, relinquishes, releases, and waives any and all rights, interests or claims whatsover which she now or hereafter may have in and to any property, estate, interest or title of whatsover nature or description, real or personal, of the husband, * * * expressly excluding, however, any right of election to take against any last will and testament of the husband, any dower or any rights of dower, and any rights of inheritance or administration to or of his estate." It further provided that the provisions of the agreement might be disclosed to the court in a proceeding for a

divorce and that they might be embodied and incorporated in the final judgment or decree. It continued with a clause customarily found in separation agreements: "The provisions of this agreement, except insofar as they may be incorporated in such decree or judgment, shall not be merged therein, but shall survive and be forever binding and conclusive on the parties."

The Surrogate overrules the contention of the respondent that a right of election was available to her by the terms of the agreement after the divorce. Section 18 of the Decedent Estate Law extends that right only to a person having the lawful status of a spouse.

The covenants of the agreement plainly reserved to the former wife "any right of election to take against any last will and testament of the husband" only where such a right existed by law.

The attorneys for the former wife make no attack upon the validity of the agreement upon the ground that it contemplated a divorce as part of the bargain. On the contrary, they have expressly conceded that the agreement was not tainted by any element of fraud or collusion. The husband and wife might have lived separately for a long period of years without any attempt to procure a divorce by either party. In that situation the agreement clearly contemplated that if there had been no dissolution of the marital relationship, the right to elect to take against the husband's will was preserved to the wife. But her voluntary action in subsequently procuring the divorce destroyed her status as widow and extinguished any contractual rights which might have existed if the marriage had continued to death.

The observations of the Court of Appeals in *Matter of Estate of Ensign* (103 N. Y. 284, 288, 289) are pertinent. That case was cited in the legislative note to subdivision 3 of section 18 as explanatory of the legislative intent that a former husband or wife after an absolute divorce recognized as valid by the law of this State is denied a right of election. There the contention was made that a wife who had procured a divorce in New York State was entitled to share in the estate of her former husband who had died intestate. It was held that the marital contract was terminated by the decree of divorce. "The relation of husband and wife, both actual and legal, is utterly destroyed, and no future rights can thereafter spring out of or arise from it. * * * But future rights dependent upon the marital relation and born of it there can be none. * * * The coverture is ended and cannot serve to found a new right

after its destruction." The court proceeded to show that only the lawful wife at the death of the decedent could take her statutory share of the personal estate or the personal exemptions available to her. " Otherwise the statutes, meant to be both just and generous, become fomentors of discord, and plan for bitterness and war. The divorced wife is not ' the widow '."

The Surrogate accordingly holds that the only right of election preserved to the respondent here by the separation agreement was one which was available to her under the provisions of section 18 of our Decedent Estate Law. Since she was not the wife at the time of the testator's death, the provisions of the agreement are of no avail to her to nullify the bar of the section.

By a final stretch of technical argument and in order to overcome this situation, her attorneys further seek to have this court, under its equitable powers, reform the separation agreement. They urge the Surrogate to rewrite it by converting it into an agreement by the testator in any event and despite the divorce, to bequeath one half of his net estate to the former wife. There is no basis in law or fact for such relief.

An agreement may be reformed where there has been a mutual mistake or " discrepancy between the terms as settled by preliminary treaty and those embodied in the writing ". (CARDOZO, Ch. J., in *Isaacs* v. *Schmuck,* 245 N. Y. 77, 82.) Reformation may also be decreed where there is a mistake of law on one side and fraud or inequitable conduct on the other. (Pomeroy's Equity Jurisprudence [5th ed.] §§ 846, 1376.) There is not the slightest evidence of coercion, undue influence, artifice or concealment here. Fraud in the making of the agreement has been specifically disclaimed upon the record of this trial by the respondent's attorneys.

Where, as here, the instrument expresses the agreement of the parties, but one of them believes that she was mistaken as to its legal effect, no relief can be given. Equity will not write a new contract for the parties. (*Isaacs* v. *Schmuck, supra; Weed et al.* v. *Weed,* 94 N. Y. 243.)

If the testator had obligated himself to leave his wife half of his net estate, the agreement would have been enforcible. (*Matter of Bloomingdale,* 278 N. Y. 435.) He did not do so. He made his will after the divorce and on December 5, 1940. The dispositions contained in it were based upon a justified belief in his mind that his former wife had no legal right to disturb them. The fact that she moved to alter the separation

agreement only after his death is indicative of the inequities inherent in her present demands. The interests of the wife in the negotiations and consummation of the separation agreement were protected by independent attorney chosen by her. The respondent is bound by the terms of her agreement and charged with knowledge of its effect. (*Pimpinello* v. *Swift & Co.*, 253 N. Y. 159; *Matter of Moore*, 165 Misc. 683, affd. 254 App. Div. 856, affd. 280 N. Y. 733.) The agreement cannot be rewritten by the court to cure a disappointment or a discovery arising subsequently that the testator left a very large estate. The respondent suffered under no mistake of law in obtaining a divorce. In the light of history it might appear to her to be a mistake of judgment on her part. She took a handsome money settlement from her husband. She procured her own freedom and deliberately chose to forfeit all her rights by the dissolution of the marriage in Nevada. No right of election whatsoever exists in her favor and she has no interest in this estate.

Submit decree on notice accordingly.